301 S.E.2d 864

**STATE of West Virginia**

v.

**CARL B., et al., etc.**

**No. 15512.**

Supreme Court of Appeals of West Virginia.

March 31, 1983.

Mary Beth Kershner, Asst. Atty. Gen., Charleston, for appellee.

P. Lee Clay, Fairmont, for appellants.

PER CURIAM:

This is a child neglect case emanating from the Circuit Court of Marion County. The circuit court permanently terminated the appellant's parental rights over two of her children, Carl B. and Teekonia C. On appeal the appellant contends that the court's ruling was not supported by the evidence and that the court failed to conduct the proceedings in a manner sufficient to protect her legal rights. We disagree, and we affirm the decision of the Circuit Court of Marion County.

In 1976, prior to the enactment of our present Child Welfare Act, *W. Va. Code*, 49–6–1, *et seq.* [1977], the West Virginia Department of Welfare petitioned for the temporary custody of the appellant's two children, Carl B. and Teekonia C. Hearings were held at which it was established that the appellant had neglected Teekonia C. by leaving her in the custody of an inappropriate caretaker. It was also shown that the appellant was not taking proper care of Carl B. It was ordered that the two children be committed to the temporary custody of the Department of Welfare.[1] The appellant was, however, granted court-approved improvement periods with the understanding that if she corrected certain deficiencies the children would be returned

---

1. Prior to enactment of the 1977 Child Welfare Act, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973) delineated the standards for taking children in child-neglect situations.

to her.[2] During the improvement periods the Department of Welfare extended extensive financial, counselling and homemaker aid to the appellant. After a time Carl B. was returned to the appellant's care, and visits by Teekonia C. were arranged with the thought of gradually returning her to the appellant's care.

Approximately two years after the Department of Welfare first became involved with Teekonia C. and Carl B., on October 27, 1978, Diana Walker, an employee of the Department of Welfare, filed a petition with the circuit court praying that the Department be granted permanent custody of Teekonia C. The petition alleged that:

"[T]he mother took the child out of the home in the middle of the night without proper clothing and the mother has failed to maintain the home in a healthful condition; that the condition of the home is so deplorable in that she allows garbage and food to build up in the home and upon the floors and furniture and that the condition of the home with said food attracted rats and roaches which effect the health and welfare of the infant child; ..."

The petition also noted that Carl B. was in the appellant's care and that the caring and supervision of him was beyond the appellant's parenting abilities. Later in January, 1979, a social worker visited the appellant's home and found that there was no food in it suitable for Carl B. She thereupon petitioned that permanent custody of Carl B. be transferred to the Department of Welfare.

The proceedings for the termination of custody of the two children were consolidated, and hearings were held on February 8, 1979, April 3, 1979, and May 11, 1979. The appellant was represented by counsel at all the hearings, and guardians ad litem were appointed to represent the interests of the children.[3] At the conclusion of the hearings the court found:

"As to the ultimate issue the Court is of the opinion that there is no reasonable likelihood that the neglect of the children by the parents can be substantially corrected in the near future and further the Court believes the welfare of the children demands that all parental rights be terminated and permanent custody be committed to the West Virginia Department of Welfare with the right to consent to their adoption by some responsible person or agency."

By way of assignment of error, counsel raises a number of rhetorical questions, which essentially present the question of whether the trial court's ruling was supported by the evidence.[4] The thrust of the argument of appellant's counsel is that the State failed to prove that there existed a situation of imminent danger to Carl B. and Teekonia C. at the time of the hearings. He argues that proof of such imminent danger was necessary before the court could properly terminate the appellant's parental rights. In taking that position he relies on the provisions of *W. Va. Code*, 49–6–3 [1977].

*W. Va. Code*, 49–6–3 [1977], authorizes the immediate, temporary taking of custody of a child by the Department of Welfare when there exists an imminent danger to the physical well-being of the child. In *State ex rel. Miller v. Locke*, 162 W.Va. 946, 253 S.E.2d 540 (1979), we recognized that it

---

2. It appears that the appellant was granted at least four improvement periods—under agreements entered into on September 27, 1976; June 17, 1977; June, 1978; and September 11, 1978.

3. At the times of the hearings, the whereabouts of the fathers of Teekonia C. and Carl B. were unknown. The representation of their interests is not an issue in the case.

4. Among the appellant's assignments of error are:

a. "Can the State take children from parents when it does not prove that the children are abused, neglected or in imminent danger?"
b. "Does the State have a right to keep children it has removed from parents on the basis of alleged neglect, abuse or imminent danger, when the alleged condition has been corrected?"
c. "Does the law and justice require that if a petitioner misrepresents the facts to the Court and causes the children to be removed that such children be returned to the parents once the true facts disprove the misrepresentation?"

allows a taking only in an emergency situation in which the welfare or the life of the child is endangered. However, *W. Va. Code*, 49–6–5 [1977], governs the final disposition of cases of child neglect or abuse. It provides, in relevant part:

"(a) Following a determination pursuant to section two [§ 49–6–2] of this article, [That is, a finding that a child is abused or neglected] the court may request from the state department information about the history, physical condition and present situation of the child. The court shall forthwith proceed to disposition giving both the petitioner and respondents an opportunity to be heard. . . .

"(6) Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, terminate the parental or custodial rights and responsibilities and commit the child to the permanent guardianship of the state department or a licensed child welfare agency. . . ."

■ In the proceeding before us, which involved the question of permanent termination of parental rights *W. Va. Code*, 49–6–5 [1977], rather than *W. Va. Code*, 49–6–3 [1977], governed. *W. Va. Code*, 49–6–5 [1977], required that the court find that Carl B. and Teekonia C. had been neglected or abused and that there was no reasonable likelihood that the conditions of neglect or abuse would be made in the near future. The court made the finding that the children had been neglected and that there was no reasonable likelihood that the conditions would be corrected in the near future. There was no requirement that the court find that the children were in imminent danger.

■ After carefully reviewing the transcripts of the hearings conducted by the circuit court and the other documents contained in the record, we conclude that the court's findings were supported by the evidence although a portion of the evidence was conflicting. The Department of Welfare's attention was first directed to the children in 1976 when the woman to whom the appellant had committed the care of Teekonia C. was observed changing her diapers on the floor of a public restroom. The woman had placed no padding under the six-week-old child who was observed to be dirty and afflicted with sores. An inspection of the appellant's home revealed generally unsanitary conditions. Teekonia C. and Carl B. were temporarily committed to the Department of Welfare. After that happened the appellant was granted improvement periods, and extensive financial homemaking, and counselling services were offered to her. In spite of the assistance of the Department of Welfare, the appellant was unable to improve the condition of her home on a consistent basis. One welfare worker, Diana Walker, described the home as follows:

"She could have it appropriately clean or she could have it very bad, and unfortunately it was usually bad, until the end when she thought we were coming back to court and she would try to make improvements. Usually there were dirty dishes, garbage dumped outside the door, roaches, garbage swept up on the floor and left for a week at a time. No sheets or blankets for the beds. Just generally dirty and I was surprised she didn't even make an attempt to keep it up, try to make it better."

Another witness testified that the garbage that the appellant left in her house drew rats. One witness, Sandra Feorene, described the house more than two years after the Department of Welfare began assisting the appellant:

"At the time I was there, it was pretty much in a mess. There were two dogs running around at the time and the floor area, the first level level, there was dog waste and scraps of food."

In addition to evidence that the appellant failed to keep her home in a sanitary condition Diana Walker testified:

"Carl was improperly clothed for the winter. It would be a very cold morning where you would need a coat and he would have on a T-shirt, I don't feel he was properly fed all the time. She would

be irresponsible in letting her assistance case be closed and food stamps stopped. Carl didn't have all of his immunizations. She would tend to put things off."

Carol Starkey, a woman acquainted with the appellant, testified that normally the appellant did not have much food after the 20th of the month. She ascribed the situation to the appellant's being good-hearted and having many friends, but "It seemed like whenever she would run out of food, everybody would get up and leave and her and the children would be without." Shortly before the final hearings in the case a welfare worker found that the appellant had no food in the house suitable for Carl B. and that she had no definite plans for getting any. As summarized by one welfare worker:

"During the time I worked with J..., she wasn't really interested in helping herself or trying to improve things for her children. She wasn't able to provide proper care for Carl and visits with Teekie were pretty bad."

In Syllabus point 6 of *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973), we stated:

"The standard of proof required to support a court order limiting or terminating parental rights to custody of minor children is clear, cogent and convincing proof."

■ That standard has been incorporated in our present Child Welfare Act, *W. Va. Code*, 49–6–2(c) [1980], which we recognized in Syllabus point 1 of *In Interest of S. C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981):

"*W. Va. Code*, 49–6–2(c) [1980], requires the State Department of Welfare, in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition ... by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden."

We believe that in the case before us the State established by clear and convincing evidence that the appellant neglected Teekonia C. and Carl B.

■ In addition to asserting that the circuit court's conclusions were not supported by the evidence, the appellant claims that there were several procedural defects in the proceeding. First she claims that *W. Va. Code*, 49–6–1(a) [1977], requires that the petition be verified by the oath of some credible person having knowledge of the situation and that that was not done. We have examined the petition instituting the proceeding to terminate the appellant's right over Teekonia C., and we note that it was verified by Diana Walker, a welfare worker who worked extensively with the appellant. The petition for change of the permanent custody of Carl B. is not in the record, but an earlier petition for the temporary custody of him was likewise verified by Diana Walker. Secondly, the appellant argues that the trial court failed to appoint her an attorney within the time period required by *W. Va. Code*, 49–6–2(a) [1977], when Teekonia C. and Carl B. were first taken by the Department of Welfare in 1976. It appears that Teekonia C. and Carl B. were first taken in 1976 in an emergency situation.

■ *In re Willis, supra*, recognized that in such a situation the immediate appointment of counsel was not necessary. The record of the 1976 proceeding is not before us, but an order dated October 26, 1976, which related to the hearing following the emergency taking shows that the appellant was represented by a court-appointed attorney. We, therefore, find that the appellant's assertions regarding procedural defects are not supported factually.

For the foregoing reasons the judgment of the Circuit Court of Marion County is affirmed.

Affirmed.