453 S.E.2d 639

**In re Elizabeth Jo "BETH," Debra Kay "Debbie" and Robert Lee "Robbie" H.,**

**West Virginia Department of Health and Human Resources, Petitioner Below, Appellant,**

**Benita K.H., Respondent Below, Appellee,**

**Robert L.H., Respondent Below, Appellee.**

No. 21908.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1994.

Decided Dec. 15, 1994.

---

Michele Rusen, Pros. Atty., Parkersburg, for appellant West Virginia Dept. of Health and Human Resources.

Daniel B. Douglass, II, Douglass, Douglass & Douglass, Parkersburg, for Elizabeth Jo "Beth," Debra Kay "Debbie," and Robert Lee "Robbie" H.

Jeffrey Elder, Albright, Bradley & Ellison, Parkersburg, for appellee Benita K.H.

Ira Haught, Harrisville, for appellee Robert L.H.

PER CURIAM:

The West Virginia Department of Health and Human Resources (Department), the petitioner below and appellant, appeals a final order entered August 2, 1993, by the Circuit Court of Wood County. The circuit court dismissed the Department's petition which alleged that Elizabeth Jo "Beth," Debra Kay

"Debbie," and Robert Lee "Robbie" H.[1] were neglected and/or abused children. The Department asserts on appeal that the circuit court erred because the evidence established that the children were emotionally and physically abused by their parents and neglected by their parents' failure to provide them with necessary shelter and supervision.

In June of 1993, Joan George, a Child Protective Services worker with the Department, filed a petition pursuant to W.Va.Code, 49–6–1 (1992),[2] alleging that nine-year-old Elizabeth, eight-year-old Debra, and six-year-old Robert were neglected and/or abused children according to W.Va.Code, 49–1–3 (1992).[3] More specifically, the petition alleged that their parents, Benita K.H. and Robert L.H., did not adequately supervise the children and abused the children emo-

tionally and physically. Furthermore, it was alleged that their living conditions were unfit.

After receipt of the petition, the circuit court determined that the children were in imminent danger and ordered that the children be placed with their maternal grandmother.[4]

At the adjudicatory hearing[5] held on July 30, 1993, the Department called the following persons to testify: two counselors employed by the Western District Guidance Center, a counselor from Action Youth Care, Elizabeth's teacher, and Joan George. The parents did not testify nor did they call witnesses on their behalf. The uncontroverted evidence showed that this family had been long-time recipients of social services and outside intervention, in part, to help them deal with Elizabeth's medical problems.[6]

1. We follow our traditional practice in domestic relations and other cases involving sensitive matters and do not use the last names of the parties. *See, e.g., Matter of Scottie D.*, 185 W.Va. 191, 406 S.E.2d 214 (1991); *State ex rel. Div. of Human Serv. by Mary C.M. v. Benjamin P.B.*, 183 W.Va. 220, 395 S.E.2d 220 (1990).

2. W.Va.Code, 49–6–1(a), states, in part:

"If the state department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court in the county in which the child resides, or to the judge of such court in vacation. The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the state department to remedy the alleged circumstances and the relief sought. Upon filing of the petition, the court shall set a time and place for a hearing and shall appoint counsel for the child."

3. W.Va.Code, 49–1–3(a), defines an "abused child":

"(a) 'Abused child' means a child whose health or welfare is harmed or threatened by:
"(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury, or mental or emotional injury, upon the child or another child in the home; or
"(2) Sexual abuse or sexual exploitation; or
"(3) The sale or attempted sale of a child by a parent, guardian, or custodian[.]"

W.Va.Code, 49–1–3(g)(1), defines a "neglected child":

"(g)(1) 'Neglected child' means a child:
"(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian; or
"(B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian[.]"
The statute was amended in 1994. The minor changes do not affect our determination of this case.

4. See W.Va.Code, 49–6–3 (1992), which states, in part:

"(a) Upon the filing of a petition, the court may order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department or a responsible relative, which may include any parent, guardian or other custodian pending a preliminary hearing, if it finds that: (1) There exists imminent danger to the physical well-being of the child, and (2) there are no reasonably available alternatives to removal of the child[.]"

5. The parents waived the preliminary hearing.

6. Elizabeth has been diagnosed as suffering from enuresis (bedwetting), attention deficit hyperactivity disorder, oppositional defiant disorder, parent child problems, a seizure disorder, and organic mental disturbance. It is undisputed that

The parents sporadically complied with the instructions from the various services, and the condition of the home and their attitude and approach to parenting did not improve.

Elizabeth would frequently run away from home and wander around Parkersburg. On several occasions, the police returned her to the home. Likewise, Robert ran away from home and was returned by the police. When Debra ran away from home, her parents did not know of her whereabouts for an entire weekend. The record reflects that the mother suspected that Debra was sexually abused during that weekend.

The Department also established that the lack of supervision had resulted in injury to the children. Debra was burned by the stove when she was cooking dinner while her mother was sleeping. When Robert climbed into the family's truck and knocked it out of gear, the truck rolled over Elizabeth, causing a head injury which required stitches. Elizabeth and Robert had been known to consume beer while being unsupervised for several hours. Elizabeth told a counselor, in explicit detail, that she had had sexual relations with a boy.

The Department described the family home as "deplorable." The family had several cats and dogs, and feces were found throughout the house. The children slept on urine-stained mattresses. Elizabeth reported that a rat was found in her bed. All three children bathed in the same water. Generally, the house was unkept and had a foul odor.

There was some evidence that Elizabeth had been physically abused. She went to school on one occasion with a bloody nose and claimed that her father hit her. There was also some evidence of sexual abuse. During a family counseling session, Elizabeth kissed her father with an open mouth. At another session, she rubbed the upper part of his thigh in an inappropriate manner. On at least one occasion, Elizabeth washed her father's back while he was in the bathtub.

After hearing the foregoing evidence, the circuit court found that the Department

failed to meet its burden of proof and dismissed the case. Furthermore, the Department's motion for a stay of the proceeding pending appeal was denied. However, this Court granted a stay of the proceedings. Therefore, the children remain in the custody of their grandmother.

The issue on appeal concerns the circuit court's dismissal of this action in light of the foregoing evidence. In Syllabus Point 1 of *West Virginia Department of Human Services v. Peggy F.*, 184 W.Va. 60, 399 S.E.2d 460 (1990), we set forth the Department's burden of proof in these matters:

"'W.Va.Code, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Human Services], in a child abuse or neglect case, to prove "conditions existing at the time of the filing of the petition ... by clear and convincing proof." The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden.' Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981)."

■ Consistent with our cases in other areas, we give appropriate deference to findings of the circuit court. In this regard, the circuit court has a superior sense of what actually transpired during an incident, by virtue of its ability to see and hear the witnesses who have firsthand knowledge of the events. Appellate oversight is therefore deferential, and we should review the circuit court's findings of fact following an evidentiary hearing under the clearly erroneous standard. If the circuit court makes no findings or applies the wrong legal standard, however, no deference attaches to such an application. Of course, if the circuit court's findings of fact are not clearly erroneous and the correct legal standard is applied, the circuit court's ultimate ruling will be affirmed as a matter of law.

■ In this case, the circuit court entered a fairly cursory order, concluding as a matter of law that the State failed to sustain its

---

due to her health problems, she is a difficult child to deal with and requires special attention.

In May of 1993, Elizabeth attempted suicide.

burden of proof. A review of the circuit court's remarks at the time it made its ruling indicates that it found the petition "frivolous" and found there to be no evidence of abuse or neglect. After reviewing the record, we find that the Department presented sufficient evidence to prove, by clear and convincing evidence, that Elizabeth, Debra, and Robert H. are neglected children as defined by W.Va. Code, 49–1–3(g)(1).

The unsanitary condition of the home, as described by the Department's witnesses, was similar to the conditions described in *State v. Carl B.*, 171 W.Va. 774, 301 S.E.2d 864 (1983). In *Carl B.*, the house was very filthy with dirty dishes, roaches, no sheets or blankets on the beds, and dog feces on the floor. We found the evidence sufficient to establish by clear and convincing evidence that Carl B. was neglected. Similarly, the Department in this case attempted to work with Benita K.H. and Robert L.H., but the condition of the home did not consistently improve. In *Carl B.*, the additional factor of a lack of food at the end of the month existed, which was not in the record in the case at bar. However, in this case the additional factor of the lack of supervision of the children exists.

Far more significant than the filth, however, is the fact that at least one of these children is deeply emotionally disturbed and in desperate need of consistent, caring parenting.

All the children have run away from home for significant periods of time while being unsupervised. Obviously, the parents failed to provide the necessary supervision to keep these children safely at home and off the streets of Parkersburg. We understand that Elizabeth's emotional problems may have contributed to her habit of running away. However, the lack of any meaningful supervision would have to be considered as a causative, as well as aggravating, factor with regard to emotional problems so severe that a young child would attempt suicide.

We, therefore, reverse the decision of the circuit court and remand this case for further proceedings. We specifically direct the circuit court to allow the parents the opportunity to move for an improvement period pursuant to W.Va.Code, 49–6–2(b) (1992). Syllabus Points 3 and 4 of *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991), state:

"3. 'Under W.Va.Code, 49–6–2(b) (1984), when an improvement period is authorized, then the court by order shall require the Department of Human Services to prepare a family case plan pursuant to W.Va.Code, 49–6D–3 (1984).' Syl. Pt. 3, *State ex rel. West Virginia Dept. of Human Serv. v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987).

"4. In formulating the improvement period and family case plans, courts and social service workers should cooperate to provide a workable approach for the resolution of family problems which have prevented the child or children from receiving appropriate care from their parents. The formulation of the improvement period and family case plans should therefore be a consolidated, multi-disciplinary effort among the court system, the parents, attorneys, social service agencies, and any other helping personnel involved in assisting the family."

For the foregoing reasons, the order of the Circuit Court of Wood County dismissing the petition is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

CLECKLEY, Justice, dissenting:

I must dissent from the majority because their decision is contrary to the explicit legislative directives. Because of the vital importance of children's welfare in West Virginia, see *In Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991) (child abuse cases must be recognized as being among the highest priority for the court's attention), the legislature has made some procedural requirements mandatory. One such mandatory procedure is the requirement that the circuit court make specific findings of fact and conclusions of law to support its decision. Specifically, at the close of the adjudicatory hearing in an abuse and neglect case, the circuit court is required under W.Va.Code, 49–6–2(c) (1992),

to "make findings of fact and conclusions of law as to whether such child is abused or neglected."[1] *See State v. T.C.,* 172 W.Va. 47, 303 S.E.2d 685 (1983). The circuit court failed to do so in this case. The order merely states that "the Petitioner has failed to sustain its burden of proof, and accordingly ... this matter [is] dismissed and stricken from the docket[.]" In Syllabus Point 1 of *State v. T.C., supra,* we state:

"In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code, 49–6–5, it must hold a hearing under W.Va.Code, 49–6–2, and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case."

At this juncture, the only error committed by the circuit court was dismissing this case without making a proper determination of the evidence of abuse and neglect.

In our earlier case of *State v. Clark,* 171 W.Va. 74, 79, 297 S.E.2d 849, 854 (1982), we offered the following explanation as to why compliance with a similar procedure was important:

"Basing its decision on the preponderance standard, the trial court must make findings of fact and conclusions of law regarding the admissibility of the evidence. When credibility of the witnesses is determinative on the issue of whether to admit or exclude evidence, the trial court must clearly indicate why it chose to believe one witness more than another. Such findings and conclusions are necessary so that this Court may properly fulfill its appellate review obligations by ensuring that the state did or did not meet its burden of proof."

In the case at bar, it is virtually impossible to review the conclusion made below without the assistance of the circuit court's specific findings and some evaluation as to how the evidence of the State was deficient. The sincerity and credibility of the State's witnesses is impossible to gather from the record before us. We need to know *why* the circuit court dismissed this case. The credibility of the witnesses and the weight accorded their testimony are matters solely within the discretion of the circuit court. Accordingly, I would remand this case with directions to comply with W.Va.Code, 49–6–2(c), giving the circuit court a reasonable chance to justify its decision.

WORKMAN, Justice, concurring:

I concur with the majority in order to expand upon their enunciation of the lower court's duty to fashion an improvement period, and to emphasize how vital it is not to permit this case and these children (and future cases involving other children) to get lost in some procedural shuffle.

First, the procedural shuffle: In 1991, we pointed out that West Virginia Code § 49–6–2(d) "clearly reflects the goal that such [abuse and neglect] proceedings must be resolved as expeditiously as possible." Syl. Pt. 5, in part, *In re Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991). After setting forth the long and tattered procedural history of *Carlita B.,* and directing that child abuse and neglect cases be recognized as among the highest priority, we pointed out:

protracted procedural histories are far too common a phenomenon in child abuse and neglect cases, as well as other child custody matters. Several cases with which we have dealt have involved similar extended periods of time without any real resolution for the child.

. . . .

Certainly many delays are occasioned by the fact that troubled human relationships and aggravated parenting problems are not remedied overnight. The law properly recognizes that rights of natural parents enjoy a great deal of protection and that one of the primary goals of the social services network and the courts is to give aid to parents and children in an effort to reunite them.

---

1. W.Va.Code, 49–6–2(c), states, in pertinent part: "At the conclusion of the hearing the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected, which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof."

The bulk of the most aggravated procedural delays, however, are occasioned less by the complexities of mending broken people and relationships than by the tendency of these types of cases to fall through the cracks in the system. The long procedural delays in this and most other abuse and neglect cases considered by this Court in the last decade indicate that neither the lawyers nor the courts are doing an adequate job of assuring that children—the most voiceless segment of our society—aren't left to languish in a limbo-like state during a time most crucial to their human development.

*Id.* at 622–23, 408 S.E.2d at 374–75.

The dissent is misguided in advocating remand for the preparation of an order more fully justifying its decision. The court below made it perfectly clear that it did not find the circumstances that these children were living in, as set forth by the unrefuted evidence, to constitute abuse or neglect.[1] There were no credibility issues. The judge basically classified as *de minimus*[2] evidence of very small children constantly running away from home, living amongst animal feces, being subject to a level of neglect so aggravated that the parents sometimes didn't even notify authorities when they disappeared for lengthy periods of time (in one case, an entire weekend), and having emotional problems so aggravated that an eight-year-old attempted suicide. Instead of making further inquiry into why these children are experiencing such problems, the court castigated the nine-year-old for all her problematic behaviors.[3]

The practical effect of a remand for the development of a more extensive order would be (1) to delay for probably a year what this family desperately needs *now:* a meaningful improvement period, including interventive services for the whole family; and (2) to add further delay to any real resolution of a case that will probably take a long time to resolve in any permanent manner anyway. The last thing we need is another hoop to jump through before these children get the kind of focused attention owed to them by the legal and child protective services.

Beth, Debbie and Robbie have waited long enough for help from a child protective services system that had already done too little for too long. According to the record, this family has been involved in the system since 1988, when the children were four, three, and one. We, as a system, have let their most crucial formative years go by without ever really addressing their problems.

The circuit court was absolutely correct that adult individuals may live amongst animal feces, emotional chaos, and total nonstructure. That is their choice. But the court was clearly wrong as a matter of law in suggesting that evidence of children living in this fashion is insufficient to constitute abuse and neglect, once such conditions are brought to the attention of the system whose mission it is to protect them.

Upon remand, the circuit court should review carefully the case of *In re Carlita B.* in the event the parents move for an improvement period. *See* 185 W.Va. 613, 408 S.E.2d 365. As we directed in *Carlita B.,*

> In formulating the improvement period and family case plans, courts and social service workers should cooperate to provide a workable approach for the resolution of family problems which have pre-

---

1. The court's order stated only that, "Based upon the evidence before the Court, the Court FINDS that the Petitioner has failed to sustain its burden of proof, and accordingly ORDERS that this matter be dismissed and stricken from the docket of this Court." The dissent is correct in that this essentially one-sentence order indicates that the court below, as appears to be the case with many other circuit courts, gave only cursory attention to the formulation of an order in this matter. This clearly flies in the face of this Court's admonitions in *Carlita B.* that these cases are both high priority and deserving of immediate and careful attention. *See* 185 W.Va. 613, 408 S.E.2d 365.

2. The record reflects that the judge, upon hearing the evidence regarding the petition, stated, "This is just diminimus [sic] stuff, all of it."

3. When evidence is presented which identifies developmental and emotional problems to the extent experienced by the children in this case, it should be a signal to the court that immediate attention is necessary, both from the standpoint of ascertaining underlying problems in the home and implementing interventive services to the children and their family.

vented the child or children from receiving appropriate care from their parents. The formulation of the improvement period and family case plans should therefore be a consolidated, multidisciplinary effort among the court system, the parents, attorneys, social service agencies, and any other helping personnel involved in assisting the family. The goal should be the development of a program designed to assist the parent(s) in dealing with any problems which interfere with his ability to be an effective parent and to foster an improved relationship between parent and child with an eventual restoration of full parental rights a hoped-for result. The improvement period and family case plans must establish specific measures for the achievement of these goals, as an improvement period must be more than a mere passage of time. It is a period in which the D.H.S. and the court should attempt to facilitate the parent's success, but wherein the parent must understand that he bears a responsibility to demonstrate sufficient progress and improvement to justify return to him of the child.

*Id.* at 625, 408 S.E.2d at 377.

Following the formulation of any improvement plan, "it is imperative that the progress of the parent(s) toward the achievement of enumerated goals be monitored closely." *Id.* As we emphasized in *Carlita B.,*

> The clear import of the statute is that matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible.

*Id.*

The improvement period should be carefully crafted and closely monitored on at least a monthly basis. This circuit judge must recognize that these children are not throwaway human beings; and further, that the way this case is handled may be the last best chance for effective intervention in their lives.

BROTHERTON, C.J., did not participate.

MILLER, J. (Ret.), sitting by temporary assignment.

WORKMAN, J., concurs and reserves the right to file a concurring opinion.

CLECKLEY, J., dissents and reserves the right to file a dissenting opinion.