# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2020 Term

_____

No. 19-0492

_____

**FILED**
**November 5, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*IN RE* A.M. AND N.M.

_____

**Appeal from the Circuit Court of Wood County**
**The Honorable J.D. Beane, Judge**
**Civil Action Nos. 18-JA-53 and 18-JA-54**

**REVERSED AND REMANDED WITH INSTRUCTIONS**
_____

Submitted:  September 16, 2020
Filed:  November 5, 2020

Courtney L. Ahlborn
Parkersburg, West Virginia
Guardian ad Litem for the Petitioners,
Minor Children, A.M. and N.M.

Patrick Morrisey
Attorney General
Lee Niezgoda
Assistant Attorney General
Fairmont, West Virginia
Attorneys for the Respondent,
West Virginia Department of Health
and Human Resources

Jeffrey B. Reed
Parkersburg, West Virginia
Attorney for the Respondent Father,
S.M.

F. John Oshoway
Grantsville, West Virginia
Attorney for the Respondent Mother,
J.M.

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syllabus point 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2. "'''W. Va. Code, 49-6-2(c) [1980] [now W. Va. Code § 49-4-601(i) (2015)], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove "conditions existing at the time of the filing of the petition . . . by clear and convincing proof." The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden.' Syllabus Point 1, *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981)." Syllabus Point 1, *West Virginia*

i

*Department of Human Services v. Peggy F.*, 184 W. Va. 60, 399 S.E.2d 460 (1990).'

Syllabus Point 1, *In re Beth*, 192 W. Va. 656, 453 S.E.2d 639 (1994)." Syllabus point 3,

*In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

3. "Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W. Va. Code, 49-1-3(a) (1994) [now W. Va. Code § 49-1-201 (2017)]." Syllabus point 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

4. "W. Va. Code, 49-1-3(a) (1984) [now W. Va. Code § 49-1-201 (2017)], in part, defines an abused child to include one whose parent knowingly allows another person to commit the abuse." Syllabus point 3, in part, *In re Betty J.W.*, 179 W. Va. 605, 371 S.E.2d 326 (1988).

**Jenkins, Justice:**

The Petitioner herein, the Guardian ad Litem ("Guardian") for the minor children A.M.[1] and N.M., appeals from an amended[2] adjudicatory order entered May 15, 2019, by the Circuit Court of Wood County in the underlying abuse and neglect case. By that order, the circuit court determined the Respondent Father, S.M. ("Father"), to be an abusive and/or neglectful parent as a result of his substantial abuse of alcohol and other substances and concluded that the Respondent Mother, J.M. ("Mother"), had committed no abuse and/or neglect of her children. On appeal to this Court, the Guardian contends that the circuit court erred by failing to also adjudicate Father of sexual abuse of the oldest child, A.M., and by not finding Mother to be an abusive and/or neglectful parent based upon her failure to protect the children from such sexual abuse. The West Virginia Department of Health and Human Resources ("DHHR"), which filed the underlying abuse and neglect proceeding, joins in the Guardian's arguments. Upon a review of the parties' arguments, the briefs, the appendix record, and the relevant law, we conclude that the circuit court erred by refusing to find both that Father had committed sexual abuse of A.M. and that Mother was an abusive and/or neglectful parent because she had failed to protect both of her children from such abuse. Accordingly, we reverse the circuit court's May 15,

---

[1]In cases such as this in which sensitive facts are involved, we refer to the parties by their initials rather than by their full names. *See, e.g.*, *In re I.M.K.*, 240 W. Va. 679, 682 n.1, 815 S.E.2d 490, 493 n.1 (2018); *In re S.H.*, 237 W. Va. 626, 628 n.1, 789 S.E.2d 163, 165 n.1 (2016). *See also* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children).

[2]*See infra* note 5.

2019 amended adjudicatory order and remand this case with instructions to conduct further proceedings consistent with this Opinion, to include the entry of a new[3] amended adjudicatory order finding that (1) Father sexually abused A.M. and (2) Mother was an abusive and/or neglectful parent because she failed to protect the children from such abuse. Additionally, the circuit court also should (1) vacate that portion of its amended adjudicatory order granting a gradual reunification of the children with Mother and (2) proceed to disposition to achieve a final resolution of the status of the parents' rights and to determine the permanent placement of the subject children.

## I.

### FACTS AND PROCEDURAL HISTORY

The underlying abuse and neglect case began in March 2018 when A.M.'s friend, H.L., disclosed to A.M., her teacher, and her school's resource officer that Father had placed his hand under her shirt and rubbed her breasts while they were lying on Father's bed and watching movies. H.L. frequently spent the night at the home A.M. shared with her parents, Father and Mother, and her younger sister, N.M. A.M. was not home at the time of the alleged incident because she had gone to the hospital with Mother for the birth of A.M.'s older sister's child. Other individuals who were in the home at the time of the alleged incident were N.M., A.M.'s younger, grade-school age sister, and the toddler child

---

[3]As discussed in Section I., *infra*, the circuit court already has entered an amended adjudicatory order in this case such that our directions on remand require the entry of a *new* amended adjudicatory order. *See* note 5, *infra*.

of A.M.'s pregnant older sister. Both H.L. and A.M. were fifteen years old at the time of this alleged incident, and while Father has been indicted on criminal charges with respect to H.L.'s allegations, the criminal case allegedly has been stayed pending the resolution of this abuse and neglect proceeding, including the instant appeal before this Court.

The DHHR's initial abuse and neglect petition recounted H.L.'s allegations as well as H.L.'s comments that, after she disclosed this incident to A.M., A.M. reportedly told H.L. that Father had "engaged in similar abuse with her," without further elaboration.[4] The petition further alleged that Mother had obtained a domestic violence protective order against Father, on behalf of A.M., after H.L.'s revelations, but that she later requested that it be dismissed. Ultimately, the petition alleged that Father had sexually abused A.M. and that Mother had failed to protect her from such abuse. The petition also referenced Father's extensive use of alcohol and marijuana.

Following forensic interviews of the children, including H.L., the DHHR amended its petition to include additional details about the alleged incident reported by H.L. and to allege further that Father had sexually abused A.M. and that Mother had failed to protect both A.M. and N.M. from such sexual abuse. In support of its allegations of sexual abuse by Father against A.M., the DHHR recounted several of A.M.'s interview

---

[4]The DHHR named the children of Father and Mother, A.M. and N.M., as child parties to the abuse and neglect proceeding; however, it did not name H.L. as a child party.

disclosures, including (1) that Father had applied medicine to her chafed breasts when she was thirteen years old and that this encounter had made her feel uncomfortable; (2) that Father shaved her legs, that she wore denim shorts to prevent him from shaving any further up her legs, and that this practice had made her feel uncomfortable; (3) that she had to sit next to Father, or on his lap, when they attended gatherings at friends' or families' homes; (4) that Father was very strict and would not let her go out with friends, have a boyfriend, or talk to boys on her cell phone; (5) that Father would enter the bathroom while she was showering and watch her, however other family members testified that Father entered the bathroom while A.M. was showering only if she asked him to bring her hygiene items like shampoo; (6) that if Father fell asleep on her bed, he would put his legs over hers to prevent her from getting up; (7) that Father watched pornography on his phone; had downloaded thousands of pornographic images onto his phone, many of which were from incestuous-themed websites; and tried to show these images to A.M.; and (8) that Father recited an incestuous-themed poem about her. The amended petition additionally alleged that Father's substance abuse impaired his ability to care for the children and that he had engaged in domestic violence with Mother in front of the children.

By amended[5] adjudicatory order entered May 15, 2019, the circuit court adjudicated Father as an abusive and neglectful parent as a result of his excessive alcohol

---

[5]The circuit court entered an amended adjudicatory order because the first adjudicatory order it issued did not make a determination as to whether Mother was an abusive and/or neglectful parent.

(approximately 30 cans of beer per day) and marijuana (every evening) use, but did not find that Father had sexually abused either H.L., based upon conflicting testimony about the alleged incident, or A.M. The circuit court additionally dismissed the petition as to Mother, and ordered that the children be returned to her care, which reunification has been stayed pending the outcome of this appeal. Additionally, the circuit court has deferred rendering a final disposition as to Father pending the outcome of this appeal. The children's Guardian now appeals to this Court to challenge the circuit court's rulings that (1) Father did not sexually abuse A.M. and (2) Mother was not abusive and/or neglectful.

## II.

## STANDARD OF REVIEW

In abuse and neglect cases such as the one presently before us, we have established the standard of review by which we consider the correctness of the circuit court's order as follows:

> [a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a

5

finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Guided by this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, the children's Guardian, as well as the DHHR, contend that the circuit court erred by failing to adjudicate Father of sexual abuse and failing to adjudicate Mother as an abusive and/or neglectful parent in the first instance. Upon our review of the record in this case, we agree that the circuit court's failure to render such rulings based upon the record evidence before it constitutes reversible error.

When prosecuting an abuse and neglect proceeding, the DHHR is required to prove the allegations set forth in its petition by clear and convincing evidence:

> """"W. Va. Code, 49-6-2(c) [1980] [now W. Va. Code § 49-4-601(i) (2015)[6]], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981).' Syllabus Point

---

[6]The version of the subject statutes in effect at the time of the events giving rise to the underlying abuse and neglect proceeding will be cited in this Opinion.

1, *West Virginia Department of Human Services v. Peggy F.*, 184 W. Va. 60, 399 S.E.2d 460 (1990)." Syllabus Point 1, *In re Beth*, 192 W. Va. 656, 453 S.E.2d 639 (1994).

Syl. pt. 3, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995) (footnote added). Clear and convincing evidence means that more than a mere scintilla of evidence has been presented to establish the veracity of the allegations of abuse and/or neglect, but it does not impose as exacting an evidentiary burden as criminal proceedings which generally require proof beyond a reasonable doubt. *See Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988) (construing clear and convincing evidentiary standard of proof as "intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases"). *See also In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (per curiam) ("It is imperative to note that the evidence in an abuse and neglect case does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence.").

In this case, the record evidence reveals that both H.L. and A.M. submitted to extensive forensic interviews: H.L. was interviewed one time, A.M. participated in two interviews, and N.M. spoke with the interviewer once. Due to the trauma faced by young victims of abuse and/or neglect, and the possibility that facing the adults they accuse of committing such atrocities might exacerbate such trauma, children subject to abuse and neglect proceedings are permitted to present their description of the alleged abuse and circumstances in their homes by testimony that may or may not be in the presence of their

alleged abusers. *See* W. Va. R. P. Child Abuse & Neglect Proceeds. 8(a) ("Notwithstanding any limitation on the ability to testify imposed by this rule, all children remain competent to testify in any proceeding before the court as determined by the Rules of Evidence and the Rules of Civil Procedure. However, there shall be a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony and the court shall exclude this testimony if the potential psychological harm to the child outweighs the necessity of the child's testimony. Further, the court may exclude the child's testimony if (A) the equivalent evidence can be procured through other reasonable efforts; (B) the child's testimony is not more probative on the issue than the other forms of evidence presented; and (C) the general purposes of these rules and the interest of justice will best be served by the exclusion of the child's testimony."); *In re S.F.*, No. 12-0489, 2012 WL 5205670, at *3 (W. Va. Oct. 22, 2012) (memorandum decision) (finding "no error in the circuit court's decision to introduce the child's recorded statement during the adjudicatory hearing"). *Cf.* W. Va. R. P. Child Abuse & Neglect Proceeds. 8(b) (explaining procedure for taking testimony directly from children during abuse and neglect proceedings). The alternate procedure to requiring the children's direct testimony was followed in the underlying proceedings when the circuit court admitted the recordings of the children's forensic interviews into evidence during the adjudicatory hearings; as a result, none of the children testified to the alleged sexual abuse, in person, during the adjudicatory hearings held by the circuit court. Despite the permissibility of this manner of victim testimony in the abuse and neglect context, however, the circuit court, in evaluating the evidence before it, improperly gave *less* weight

8

to the testimony of the children who were subjected to sexual abuse by Father *and* found their testimony to be *less* credible merely because Father was not permitted to cross-examine H.L. and A.M. regarding their specific allegations. In this regard, the circuit court specifically observed in the findings of fact set forth in its amended adjudicatory order that "assessment of the credibility of witnesses whose testimony is conflicting becomes difficult and critical" and that

> [t]his assessment is complicated in the present case where [Mother's adult daughter] and [Father's adult son] as well as the respondent parents testified under oath and were cross-examined while H[.] L[.] and A[.] M[.] made allegations of sexual abuse to a sympathetic interviewer, not under oath and without being subject to cross-examination.

Discounting both the weight and the veracity of the child victims' testimony for this reason in an abuse and neglect proceeding that specifically allows the presentation of such evidence in this manner was clearly an erroneous ruling by the circuit court.

Although we are obligated to defer to a circuit court's assessment of witness credibility in most cases, abuse and neglect cases present a unique circumstance given the Court's *parens patriae* duty to protect the children of this State from such harmful conduct. *See* Syl. pt. 5, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973) ("Though constitutionally protected, the right of the natural parent to the custody of minor children is not absolute and it may be limited or terminated by the State, as *parens patriae,* if the parent is proved unfit to be entrusted with child care."). Accordingly, that is why our usually deferential standard of review of a lower court's findings of fact yields when we

9

are convinced that the circuit court, in making such evidentiary rulings, has committed a mistake based upon our review of the record evidence as a whole. *See generally* Syl. pt. 1, *Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177. The evidentiary record presently before us leaves us with a "definite and firm conviction" that the circuit court erred in its evaluation of the evidence in this case because there is clear and convincing evidence that Father engaged in the sexual abuse of which he has been accused. Syl. pt. 1, in part, *id.*

The underlying abuse and neglect case, from which this appeal has been taken, was filed by the DHHR based upon allegations that Father had sexually abused his daughter's friend, H.L., as well as his own daughter, A.M., and that Mother had failed to protect both A.M. and N.M. from such abuse. Specifically, H.L. recounted that, while she was alone with Father watching movies on his bed,[7] Father placed his hand inside her shirt and fondled her breasts. She maintained the same description of the encounter during numerous retellings of the incident to A.M., a teacher, a school resource officer, and the forensic interviewer. During her forensic interview, both her demeanor and her extreme emotion strongly suggest that H.L.'s description of the events that she alleges to have occurred between Father and herself actually transpired as she claims. *See generally State v. Edward Charles L.*, 183 W. Va. 641, 650, 398 S.E.2d 123, 132 (1990) (explaining that cases involving child victims of sexual abuse "generally pit the child's credibility against

---

[7]The two younger children who also were in the residence that evening were watching television in a different room.

an adult's credibility and often times an adult family member's credibility. Since sexual abuse committed against children is such an aberrant behavior, most people find it easier to dismiss the child's testimony as being coached or made up or conclude that any touching of a child's private parts by an adult must have been by accident.").

While Father did not have formal rights regarding H.L. as her parent or guardian, H.L. was a very frequent visitor in Father's home such that he was, particularly on the evening of the incident giving rise to this proceeding when no other adults were present in the dwelling, acting as her custodian. *See* W. Va. Code § 49-1-204 (eff. 2015) (defining "custodian" in context of abuse and neglect proceedings as "a person who has or shares actual physical possession or care and custody of a child, regardless of whether that person has been granted custody of the child by any contract or agreement"). The incident H.L. alleges to have occurred also fits squarely within the statutory definition of sexual abuse in the provisions governing abuse and neglect proceedings. *See* W. Va. Code § 49-1-201 (eff. 2017) [8] (explaining "sexual abuse" as including "sexual contact") *and* W. Va. Code § 61-8b-1(6) (eff. 2007) (describing "sexual contact," in relevant part, as "any intentional touching, either directly or through clothing, of the breasts . . . of another person, . . . where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party"). Moreover, such a conclusion

---

[8]*See* note 6, *supra*.

supports, by extension, a finding that the other children residing in the home, specifically A.M. and N.M., also were abused children:

> Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W. Va. Code, 49-1-3(a) (1994) [now W. Va. Code § 49-1-201 (2017)[9]].

Syl. pt. 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (footnote added).

Furthermore, the allegations of A.M.'s interactions with Father, over a period spanning at least two years, also supports a finding that Father sexually abused her. While many of the encounters detailed by A.M. involve unusual and, in some instances, rather bizarre behavior by Father, not all of these incidences support a finding that Father engaged in sexual misconduct as defined by the abuse and neglect statutes' definition thereof. *See generally* W. Va. Code § 49-1-201 (providing descriptions of conduct constituting sexual abuse, sexual assault, sexual contact, sexual exploitation, sexual intercourse, and sexual intrusion). Nevertheless, other behavior A.M. alleges Father to have engaged in with her is extremely more disturbing because the incidents A.M. described entail more intimate, and inappropriate, touching of A.M., and include sexual overtones and graphic sexual innuendoes. *See id*. On balance, our review of both the evidence in the record detailing A.M.'s allegations, as well as testimony that corroborated several of these incidents and

---

[9]*See supra* note 6.

the appliable law, demonstrate that the DHHR presented clear and convincing evidence that Father had sexually abused A.M. *Cf. In re K.P.*, 235 W. Va. 221, 230, 772 S.E.2d 914, 923 (2015) (recognizing that "[s]exual abuse may be proven solely with the victim's testimony, even if that testimony is uncorroborated" (citation omitted)); Syl. pt. 5, in part, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981) (holding, in criminal law context, that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible"). Therefore, the circuit court erred by failing to find that, in addition to his other behavior demonstrating his abuse and neglect of his children, Father's actions also constituted sexual abuse of A.M. Accordingly, we reverse the circuit court's contrary ruling and remand this case for further proceedings consistent with this Opinion, including the entry of a new amended adjudicatory order finding that Father, in addition to the other parental shortcomings found by the circuit court, also had sexually abused A.M. Thereafter, the circuit court should conduct further proceedings to reach a final disposition regarding Father's rights to his children.

During the underlying proceedings, the circuit court entered an amended adjudicatory order because it had failed to render an adjudication as to Mother in its first adjudicatory order.[10] In its amended order, the circuit court concluded that Mother had neither abused nor neglected either of her children, A.M. or N.M. However, in light of our

---

[10]*See supra* note 5.

determination that the circuit court erred by failing to find that Father had sexually abused A.M., we likewise find that the circuit court committed additional error by refusing to adjudicate Mother as an abusive and/or neglectful parent based upon her failure to protect A.M., and N.M. who resided in the same household, from such abuse.

To adjudicate a parent of abuse and/or neglect, it is not necessary that the parent him/herself committed the acts giving rise to such a finding. This is so because "W. Va. Code, 49-1-3(a) (1984) [now W. Va. Code § 49-1-201 (2017)[11]], in part, defines an abused child to include one whose parent knowingly allows another person to commit the abuse." Syl. pt. 3, in part, *In re Betty J.W.*, 179 W. Va. 605, 371 S.E.2d 326 (1988) (footnote added). *Accord* W. Va. Code § 49-1-201 (defining "abused child," in part, as "a child whose health or welfare is being harmed or threatened by [a] parent . . . who . . . knowingly allows another person to inflict physical injury or mental or emotional injury, upon the child or another child in the home"). Rather, a parent's knowledge of the abusive and/or neglectful conduct of another is sufficient upon which to base an adjudication of abuse and/or neglect. In this regard, we have held that

> [t]he term "knowingly" as used in West Virginia Code § 49-1-3(a)(1) (1995) [now W. Va. Code § 49-1-201 (2017)[12]] does not require that a parent actually be present at the time the abuse occurs, but rather that the parent was presented with sufficient facts from which he/she could have and should have recognized that abuse has occurred.

---

[11]*See* note 6, *supra*.

[12]*Id.*

14

Syl. pt. 7, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va.

489, 475 S.E.2d 865 (1996) (footnote added).

> Thus, for a child to be determined to be an "abused child," the parent charged with such abuse need not commit the abuse him/herself, so long as he/she knew that the subject abuse was being perpetrated, even if the alleged abuse occurs outside of the presence of the parent charged with such abuse.

*In re A.L.C.M.*, 239 W. Va. 382, 392, 801 S.E.2d 260, 270 (2017) (citation omitted).

Likewise, a parent's failure to acknowledge the existence of abuse and/or neglect, acquiescence to such conduct, or the failure to intervene or to take measures to stop abuse and/or neglect that is occurring or to prevent such conduct from occurring in the future, also can support a finding that the parent is abusive and/or neglectful. In this regard, we have found that not only an adjudication as an abusive and/or neglectful parent, but also a full termination of the complicit parent's parental rights, is warranted by a parent's failure to protect his/her child(ren) from conditions of abuse:

> Termination of parental rights of a parent of an abused child is authorized under *W. Va. Code,* 49-6-1 to 49-6-10 [now W. Va. Code § 49-4-601 to § 610], as amended, where such parent contends nonparticipation in the acts giving rise to the termination petition but there is clear and convincing evidence that such nonparticipating parent knowingly took no action to prevent or stop such acts to protect the child. Furthermore, termination of parental rights of a parent of an abused child is authorized under *W. Va. Code,* 49-6-1 to 49-6-10 [now W. Va. Code § 49-4-601 to § 610], as amended, where such nonparticipating parent supports the other parent's version as to how a child's injuries occurred, but there is clear and convincing evidence that such version is inconsistent with the medical evidence.

Syl. pt. 2, *Matter of Scottie D.*, 185 W. Va. 191, 406 S.E.2d 214 (1991). *See also* Syl. pt. 2, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002) ("'Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.' Syl. Pt. 2, *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996).").

Under the facts of this case, it is apparent that Mother both acquiesced in and failed to acknowledge that Father was committing acts of sexual abuse against A.M. During the underlying abuse and neglect proceedings, Father was prohibited from visiting with the children; nevertheless Mother continued to communicate with Father during this time and allowed him to visit with the children, at a time he was expressly precluded from doing so, thus allowing Father access to A.M. to engage in further inappropriate behavior. Additionally, during the circuit court proceedings, Mother repeatedly maintained that Father was not committing abusive and/or neglectful acts against the children even though many of the reported interactions between Father and A.M. were not consistent with a typical, nonabusive father-daughter relationship. As further evidence of Mother's failure to fully acknowledge or appreciate the gravity of A.M.'s allegations of sexual abuse,

Mother also delayed scheduling A.M.'s forensic interview for almost a month after H.L. reported her sexual abuse by Father.[13]

Additionally, as argued by both the Guardian and the DHHR on appeal to this Court, the record evidence supports a finding that, in the face of apparent knowledge of the sexual abuse in the home, Mother failed to protect her children from such misconduct. Upon hearing H.L.'s report of her encounter with Father, the school resource officer advised Mother to obtain a protective order on behalf of A.M. Although she did so, Mother thereafter decided, of her own volition, to withdraw the protective order even though A.M. reported still feeling uncomfortable around Father. Such actions further evince Mother's refusal to acknowledge the existence of abuse and neglect by Father and her failure to protect her children from such conditions.

Based upon the record evidence regarding Mother, the DHHR presented clear and convincing evidence that Mother abused and/or neglected her children by failing to protect them from Father's abusive and neglectful conduct and that the circuit court erred by failing to adjudicate Mother as an abusive and/or neglectful parent. Accordingly, we additionally reverse the circuit court's order in this regard and remand this case with instructions to enter a new amended adjudicatory order finding Mother to be an abusive

---

[13]It appears from the record that Mother's mother, *i.e.* A.M.'s grandmother, passed away shortly after H.L.'s encounter with Father, which partially explains the reason for Mother's delay in facilitating the interview.

and/or neglectful parent based upon her failure to protect her children from Father's abusive and neglectful conduct. In light of this ruling, we further direct the circuit court to vacate that portion of its amended adjudicatory order that provided for the children to be gradually reunified with Mother because such reunification is inappropriate given that Mother has, during the underlying abuse and neglect proceedings, facilitated Father's access to the children at a time when he was prevented from having contact with them; failed to acknowledge her complicity in, or lack of recognition of, Father's abuse and neglect of the children; and otherwise has not protected her children from the conditions of abuse and neglect giving rise to this case. Thereafter, the circuit court also should proceed to disposition as to Mother's rights to her children, as well as a determination of the children's permanent placement following the court's determination of the status of both parents' rights.

## IV.

## CONCLUSION

For the foregoing reasons, the May 15, 2019 amended adjudicatory order of the Circuit Court of Wood County is hereby reversed, and this case is remanded with instructions to the circuit court to conduct further proceedings consistent with this Opinion, to include the entry of a new amended adjudicatory order finding that (1) Father sexually abused A.M. and (2) Mother was an abusive and/or neglectful parent because she failed to protect the children from such abuse. Additionally, the circuit court also should (1) vacate that portion of its amended adjudicatory order granting a gradual reunification of the

children with Mother and (2) proceed to disposition to achieve a final resolution of the status of the parents' rights and to determine the permanent placement of the subject children. Finally, we direct the Clerk of this Court to issue the mandate contemporaneously with this Opinion.

Reversed and Remanded with Instructions.