475 S.E.2d 560

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES ex rel. Brenda WRIGHT, Social Services Worker, Petitioner Below, Appellee,**

v.

**In the Matter of BRENDA C., Rodney C., Christopher C. and Brandie Nicole C., Respondents Below,**

Brenda C., Appellant.

No. 23290.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1996.

Decided July 19, 1996.

F. Jane Hustead, Assistant Prosecuting Attorney, Huntington, Joanna Bowles and

Barbara L. Baxter, Assistant Attorneys General, Charleston, for Appellee.

Jerry Blair, Huntington, for Brenda C.

Keith L. Newman, Huntington, for Rodney C.

Lisa Fredeking White, Guardian ad Litem, Huntington, for Christopher and Brandie C.

PER CURIAM.

Brenda C. appeals from an order of the Circuit Court of Cabell County terminating her parental rights to her two infant children, Christopher C. and Brandie Nicole C. After reviewing whether Appellant's parental rights were properly terminated, we reverse and remand.

Appellant gave birth to Brandie Nicole C. on May 31, 1994. Shortly after Brandie's birth, the West Virginia Department of Health and Human Resources ("DHHR") filed a petition on June 3, 1994, alleging that both Brandie and Christopher were "neglected and/or abused children." Through the petition, the DHHR requested both temporary and permanent custody of the children; termination of parental rights; and the right to provide medical and foster care to the children. As support for its petition, the DHHR averred that as a result of Brenda C.'s addiction to drugs, Brandie was born addicted and was suffering withdrawal symptoms. The children's father was also alleged to be drug addicted. Simultaneous with its filing of the petition, the DHHR sought emergency custody of the children pursuant to oral, ex parte motion. The circuit court granted the DHHR emergency custody and scheduled further hearing on the case for June 6, 1994.

Appellant appeared at the temporary custody hearing on June 6, 1994, without counsel. The DHHR represented to the court that Christopher was at risk based on the fact that he was three years old, was not toilet trained, and refused to eat to avoid having to soil himself. Following this hearing, the court awarded temporary custody of both children to the DHHR; approved temporary placement of the children; appointed counsel for the respondents; granted additional temporary relief; and scheduled an adjudicatory hearing for June 16, 1994.

Appellant was represented by counsel at the June 16, 1994, hearing. During this hearing, the assistant prosecuting attorney appearing on behalf of the DHHR, represented to the court:

Prior to coming on the record, we have agreed through counsel to certain findings of fact, including the fact that there is eminent danger to the well-being—physical well-being of the children, that there is no reasonable alternative available to the removal of the children, and continuation in the home is not in their best interest. Because the child, Brandie, was born opiate addicted, and Mrs. C . . . .—I believe both Mr. and Mrs. C . . . . have admitted to substance abuse problems, and based upon those findings, we have agreed that the children will remain in the temporary legal custody of the Department because there is no less drastic alternative to their removal.

After making these statements, the assistant prosecutor advised the court that "we need an adjudicatory hearing set." Appellant's attorney did not object to the above representations nor did he find fault with the request for an adjudicatory hearing. The hearing transcript contains no indication that any sworn testimony was taken or even that a proffer of evidence was made—only counsel's statements.

During the course of this hearing, the circuit court asked Appellant and her husband: "Mr. and Mrs. C . . . ., do you understand everything that was said here today?" After they both indicated their assent, the court inquired further, "And you-all are in agreement with this?" Again, Appellant and her husband stated "yes." The court then said, "I'll accept the agreed order and find that it is in everyone's best interest." No findings of fact or conclusions of law were made orally on the record at that time. The court did continue the matter to August 11, 1994, to permit the presentation of a "service plan" and to allow the parents to get substance abuse assistance. The assistant prosecutor requested that an adjudicatory hearing be set.

By order dated July 11, 1994, the circuit court stated its findings with regard to the June 16, 1994, hearing:

Whereupon the parties represented to the Court that they had, subject to the Court's approval, entered into an agreement with regard to the conditions as they existed at the time of the filing of this petition and asked the Court to approve that agreement, which motion the Court, after due consideration of the representations of counsel, as well as the record and verified petition herein, did sustain.

Based upon the stipulation of the parties the Court does hereby FIND as follows;

1.   That the infant children were abused and/or neglected at the time of the filing of the petition in this matter.

2.   That the infant child, Brandie Nicole C . . . . was born opiate addicted due to her mother's addiction to drugs.

3.   That the mother and father in this matter have admitted to substance abuse.

This order was signed by the assistant prosecuting attorney, but not by Appellant, her husband, or their respective counsel. The order reflects that the matter is continued to August 11, 1994, but fails to mention the scheduling of an adjudicatory hearing.

At the August 11, 1994, hearing the court granted a thirty-day improvement period to Appellant to permit enrollment in a residential drug treatment program and continued the matter to September 9, 1994, as reflected by a *nunc pro tunc* order entered on May 3, 1995. As a result of the September 9, 1994, hearing, the court continued temporary legal custody with the DHHR of the minor children; granted Appellant continued physical custody of Christopher for a four-month improvement period; and continued the matter to December 15, 1994, for a dispositional hearing.

The issue of termination or other disposition was apparently never addressed at the December 15, 1994, hearing. Instead, the court continued legal custody with the DHHR, but granted Appellant physical cus- tody of Brandie and enlarged the previously granted four-month improvement period to twelve months. The case was continued to April 20, 1995, and a lengthy letter that Appellant apparently wrote to the trial judge was filed as a part of the record.

Appellant's original counsel was relieved by order of the court and new counsel appointed on March 7, 1995. From letters submitted by Appellant to the court, the record indicates that Appellant was in the Ohio Reformatory for Women at Marysville, Ohio, at this time with an expected release date of October 9, 1995. At the April 20, 1995, hearing Appellant was unable to attend due to her incarceration, but was represented by counsel. The court continued custody of the children with the DHHR at this hearing.

Prior to the final hearing scheduled for May 2, 1995, Appellant's counsel filed a motion to continue the hearing.[1] The court denied the motion at the May 2, 1995, hearing. Appellant's counsel raised as additional grounds for his motion seeking a continuance that he wished to conduct cross-examination on certain matters. Notwithstanding this objection, the court proceeded with the hearing and terminated Appellant's parental rights.

The transcript of the May 2, 1995, hearing indicates the following comment by the circuit court:

My understanding from her letters is that she will be possibly getting out into a halfway house of some kind or some kind of a halfway measure, but that that would also be in the state of Ohio, and certainly she could not regain custody of her children even under that most propitious of situations in her mind, which again, I'm not certainly guaranteed. So, I do believe that this has gone on for a year-and-a-half. And she did make some admissions at the original adjudication of abuse and neglect which allowed us to adjudicate the situation. And I don't know that the time standards and the best interests of these

---

1.   As grounds for the requested continuance, counsel represented that he had not been able to meet with his client; that a meeting required a drive of "five plus hours;" that the prison did not

regard him as Appellant's counsel of record; that Appellant was scheduled to be released in June of 1995; and that the State would not be prejudiced by a continuance.

children would allow me to continue this any further. She is responsible for her own situation and incarceration and her own future situation. In light of the fact that she has admitted the elements that allowed the Court to adjudicate in the first place, I do believe that I should go ahead, for the best interests of the children, with a termination hearing today.

The prosecuting attorney then proceeded to vouch the record to include the fact that "there was an initial adjudication of drug abuse and addiction by both parents" at the June 16, 1994, hearing.

By order dated May 3, 1995, the court terminated Appellant's parental rights, noting within its order, that she "has previously admitted in Court that she neglected and/or abused her infant children due to her habitual drug habits and a judicial determination of neglect and/or abuse was rendered in June of 1994.

■ As her single assignment of error, Appellant complains that the circuit court terminated her parental rights without ever holding a hearing on the merits wherein evidence was presented. She questions whether the "agreed order" entered after the June 16, 1994, hearing, where no testimony was adduced, is sufficient "to eventually terminate" parental rights. Appellant asserts that she was entitled to an evidentiary hearing before her parental rights were terminated, that clear and convincing evidence must be presented both for an adjudication of abuse and neglect and for a termination of parental rights. Additionally, Appellant states that the court could not rely on her letters to it since they were not introduced into evidence. In response, Appellees state that the documentary evidence and Appellant's own admissions provide adequate evidence to support the court's findings.[2]

Parental rights can only be terminated pursuant to compliance with specific statutory procedures. Appellant argues that the circuit court failed to comply with the provisions of West Virginia Code § 49–6–2(c) (1995). That provision states that:

In any proceeding under this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. The petition shall not be taken as confessed. A transcript or recording shall be made of all proceedings unless waived by all parties to the proceeding. The rules of evidence shall apply. Where relevant, the court shall consider the efforts of the state department to remedy the alleged circumstances. At the conclusion of the hearing the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected, which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof.

Appellant's specific complaint regarding lack of compliance with West Virginia Code § 49–6–2(c) focuses on the circuit court's complete reliance on the agreement represented by the assistant prosecuting attorney at the June 16, 1994, hearing in lieu of requiring the DHHR to put on any evidence to prove the allegations of its petition.

■ We stated in syllabus point three of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995):

" ' "W. Va. Code, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Human Services], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition … by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to

**2.** Appellees contend additionally that Appellant was not prejudiced by her absence from the termination hearing on two grounds: (1) she occasioned her own absence; and (2) she was represented by counsel. Further, Appellees argue that the circuit court retains the authority to modify its dispositional orders as circumstances change. Because we dispose of this case on other grounds, we do not address these contentions.

meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).' Syllabus Point 1, *West Virginia Department of Human Services v. Peggy F.*, 184 W.Va. 60, 399 S.E.2d 460 (1990)." Syllabus Point 1, *In re Beth*, 192 W.Va. 656, 453 S.E.2d 639 (1994).

In this case, both the assistant prosecutor and the circuit court appear to have assumed that the agreement referenced by the assistant prosecutor at the June 16, 1994, sufficed to constitute the clear and convincing proof of the petition's averments required by West Virginia Code § 49–6–2(c). We agree with Appellant that the DHHR failed to meet its statutory burden of proof.

While West Virginia Code § 49–6–2(c) "does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare [DHHR] is obligated to meet this burden[,]" what occurred in this case clearly falls short of statutory intent. *In re Christina L.*, 194 W.Va. at 448, 460 S.E.2d at 694. The circuit court was not presented with a signed stipulation reflecting the representations, which the assistant prosecutor made to the court, that could then properly be entered into evidence. If the stipulation had not been reduced to writing, the parties could have testified regarding their understanding of and assent to the terms of the agreement. Although the circuit court did engage in limited questioning of Appellant and her husband regarding their understanding and agreement concerning the assistant prosecutor's statements to the court, this did not constitute evidence. Significantly, neither Appellant, her husband, or their respective counsel signed the order dated July 11, 1994, which references and incorporates the agreement of the parties concerning the veracity of the petition's averments, including the finding that "the infant children were abused and/or neglected at the time of the filing of the petition."

■ As we explained in syllabus point one of *State v. T.C.*, 172 W.Va. 47, 303 S.E.2d 685 (1983),

In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W. Va. Code, 49–6–5, it must hold a hearing under W. Va. Code, 49–6–2, and determine "whether such child is abused or neglected." Such a finding is a prerequisite to further continuation of the case.

*Id.* at 48, 303 S.E.2d at 686. In this case, the circuit court appears to have circumvented its duty of holding a hearing for the purposes of making a determination of abuse or neglect under West Virginia Code § 49–6–2(c), or, in the alternative, of overseeing the formalization of the stipulation and its entry into evidence. The assistant prosecutor's request for an "adjudicatory hearing" after she informed the court regarding the agreement indicates that even she recognized the need for an evidentiary proceeding.

We do not suggest that a stipulation cannot be used to meet the requirements of West Virginia Code § 49–6–2(c). Clearly, a stipulation is a valid means of establishing the parties' assent to the averments contained within an abuse or neglect petition. *See T.C.*, 172 W.Va. at 52, 303 S.E.2d at 690 n. 5 (noting use of stipulation to make showing of abuse and neglect); *see also In re D.R.*, 673 A.2d 1259, 1270 (D.C.Ct.App.1996) (finding that "[i]n a stipulation dated June 19, 1994, the mother admitted to both prenatal and postnatal drug abuse that impaired her ability to provide for her child"); *In re Shollenberger*, No. 1995CA00135, 1996 WL 363538, slip op. at 1 (Ohio Ct.App. May 20, 1996) (stating that "[o]n December 18, 1990, upon a stipulation by the parties, the children were adjudicated as being neglected"). We further note that the proposed West Virginia Rules of Child Abuse and Neglect Proceedings, which are currently under public comment until August 15, 1996, include an express rule that addresses the use of stipulations within abuse and neglect proceedings. Proposed rule 26 states that:

**Stipulated Adjudication and Uncontested Petitions.** (a) *Required Information.* Any stipulated or uncontested adjudication shall include the following information:

(1) Agreed upon facts supporting court involvement regarding the respondent's (s') problems, conduct, or condition;

(2) A statement of facts asserted by the petitioner, but not admitted, which relate

to respondent's (s') problems, conduct, or condition; and

(3) A statement of respondent's (s') problems or deficiencies to be addressed at the final disposition.

(b) *Voluntariness of Consent.* Before accepting a stipulated or uncontested adjudication, the court shall determine that the parties understand the content and consequences of the admission or stipulation and that they voluntarily consent.

While these rules have not been formally adopted, they clearly lend validity to the use of stipulations in connection with abuse and neglect proceedings.

While a stipulation may have been reached in this case, it was never sufficiently formalized. Not only was the agreement never reduced to writing or signed by the parties, the stipulation itself was never introduced into evidence. The agreement is not part of the record other than by the representations of the assistant prosecuting attorney and the lack of any response by Appellant or her counsel regarding its terms. Accordingly, we are compelled to conclude that the DHHR failed to meet its burden of demonstrating by clear and convincing proof the veracity of the statements in its petition. Because no evidence was ever introduced in this case, the circuit court's sole reliance on this loosely assembled stipulation was erroneous. The statute clearly contemplates the introduction of evidence to substantiate the averments of the petition, although such evidence may take the from of a properly prepared and tendered stipulation. *See* W. Va. Code § 49–6–2(c).

Because the threshold issue of abuse and neglect was inadequately addressed, we reverse and remand for further proceedings. On remand, we direct the circuit court to determine whether in fact a stipulation was made. If such a stipulation was made and can be properly introduced into evidence, the court should proceed to make a determination of whether abuse or neglect existed at the time of the petition and subsequently, to make further disposition of this matter. *See* W. Va. Code § 49–6–2(c). Under this

Court's decision in *State ex rel. Amy M. v. Kaufman,* 196 W.Va. 251, 470 S.E.2d 205 (1996), we further instruct the circuit court that it may be entitled to proceed without granting a further pre-adjudicatory improvement period. We note, however, that it would be in the court's discretion to consider granting a post-adjudicatory improvement period upon proper motion.[3] Under any circumstance, the court should act with great dispatch to bring resolution to Brandie's and Christopher's lives.

For the foregoing reasons, the decision of the Circuit Court of Cabell County is hereby reversed and remanded.

Reversed and remanded.

ALBRIGHT and CLECKLEY, JJ., concur and reserve the right to file concurring opinions.

ALBRIGHT and CLECKLEY, JJ., concurring.

Although we concur with the decision to reverse and remand this cause for further proceedings, we believe that the majority has failed to address issues raised by the appellant's assignment of error and by a complete review of the record which was compelled by her contentions. The points we address are not mere hurdles, thoughtlessly thrust in the way of a benevolent state committed to the protection of its citizens. We address here principles and rules that give meaning in the difficult area of child abuse and neglect to the commitment of our people to live under a government of laws. One of the highest aspirations of our people, fully expressed in the laws of our State, is to protect children from abuse and neglect. We discuss here the methods by which, under law, our courts acquire and exercise jurisdiction to promote that aspiration, promptly and effectively, with justice for all. In fact, those methods are relatively plain and simple, well grounded in our jurisprudence and expressive of the fundamentals of due process of law. We submit that attention to those principles and rules, reviewed here, will materially assist

**3.** A new statute is now in effect which addresses the granting of improvement periods in cases of child neglect or abuse. *See* W. Va. Code § 49–6–12 (1996).

the courts and their officers in fulfilling the inherent duty of courts to protect the interests of children.

**Petition.** The petition which initiated the abuse and neglect proceeding before us is seriously defective as a charging instrument. The minimum requirements for a petition charging abuse and neglect are set out in W.Va. Code § 49–6–1(a).[1] While it apparently seems self-evident to the majority that an allegation that a parent is addicted to drugs and that a child has been born addicted satisfies all requirements to plead a case that that parent's child is abused or neglected, we do not perceive the issue as being that simple.

The petition before us fails to allege how the specific conduct of the parents constituting abuse or neglect, in the words of the statute, "comes within the statutory definition of abuse and neglect with references thereto". The definitions of "Abused child" and "Neglected child" referred to are set out in W.Va. Code §§ 49–1–3(a) and (g).[2] We believe that the petition should allege (1) the specific conduct constituting abuse or neglect, (2) the particular statutory definition or definitions relied upon, set forth verbatim, with Code references, and (3) how the specific conduct comes within those definitions.

The petition also fails to allege what supportive services, if any, were offered to the family by the Department of Health and Human Resources. West Virginia Code § 49–6–1(c) requires that the State provide supportive services in an effort to remedy the circumstances detrimental to the child or children involved in the proceeding, and W.Va. Code § 49–6–1(a), set out in footnote 1, requires that the petition allege what services, if any, have been provided. We recognize that in some extreme situations the Department of Health and Human Resources may be able only to take emergency custody and file the petition. However, reading the two statutory provisions together, we believe that some allegation regarding supportive services is not only advisable, but required.

Lastly, the petition before us names the children but does not allege their whereabouts or that they are residents of, or are found in, the county and State. Likewise, while the parents are named in the caption and mentioned by name and relationship to the children in the allegations of specific conduct, the petition fails to allege their

---

**1.** West Virginia Code § 49–6–1(a) states:

If the state department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court in the county in which the child resides, or to the judge of such court in vacation. The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the state department to remedy the alleged circumstances and the relief sought. Upon filing of the petition, the court shall set a time and place for a hearing and shall appoint counsel for the child. When there is an order for temporary custody pursuant to section three [§ 49–6–3] of this article, such hearing shall be held within thirty days of such order, unless a continuance for a reasonable time is granted to a date certain, for good cause shown.

**2.** W.Va. Code §§ 49–1–3(a) and (g), read as follows:

(a) "Abused child" means a child whose health or welfare is harmed or threatened by:

(1) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home; or

(2) Sexual abuse or sexual exploitation; or

(3) The sale or attempted sale of a child by a parent, guardian or custodian in violation of section sixteen [§ 48–4–16], article four, chapter forty-eight of this code.

\* \* \* \* \* \*

(g) (1) "Neglected child" means a child:

(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian; or

(B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian;

(2) "Neglected child" does not mean a child whose education is conducted within the provision of section one [§ 18–8–1], article eight, chapter eighteen of this code.

whereabouts or place of residence. While we would not, at this stage, require amendment of the petition to further address these matters, we believe that, as an aid to the trial court in obtaining effective service on and jurisdiction over all necessary parties, petitions in child abuse or neglect case should contain separate allegations, setting out the names, ages or birth dates, and residence or whereabouts of each child, and setting out the names and residence or whereabouts of each respondent, with a clear statement of any relationship to the children.

**Notice.** We regret that the majority did not address the fact that the record before us does not contain copies of any notice served on the respondents nor any return of service showing, *prima facie*, that respondents were ever served with copies of the petition and the notice required by law in lieu of summons or other process. West·Virginia Code § 49–6–1(b) [3] sets out the requirements for the contents of the notice to be served with a copy of the petition, in lieu of a summons or other process. We see compliance with the requirements that parents be given a notice stating the time and place for hearing the cause, the right to counsel, and that the abuse and neglect proceedings "can result in the permanent termination of the parental rights", as essential to the timely and effective protection of the interests of the children whose welfare is at issue. The absence of a clear record of the service of such a notice on the parents should be addressed in this cause, not only to give binding effect to otherwise sound decrees of the trial court altering the parents' rights, but also to give assurance that the steps taken to protect the children involved are operative.

**Non-waiver of defects.** We have additional reason for concern about full compliance with the statutory mandates regarding the petition and notice. The record does not disclose that either of the counsel appointed for the appellant in the course of this proceeding raised objection to the form of the petition or notice. While we have pointed out apparent defects in the petition, we cannot say that there are any defects in the notice or in the service of the petition and notice, since, as noted, there is no copy of the notice and return of service in the record. Moreover, because the appellant has personally appeared in this cause with counsel, one might ordinarily assume that defenses arising out of any defect in the notice or any defect in or absence of any return of service had been waived if no objections were timely made. *See Manypenny v. Graham*, 149 W.Va. 56, 138 S.E.2d 724 (1964).

However, we believe that is not a safe assumption in light of the provision of W.Va. Code § 49–6–1(b), that: "Failure to. object to defects in the petition and notice shall not be construed as a waiver." We· regret that the majority failed to address the impact of that provision of law; we earnestly hope that the trial court will. Unfortunately, those who may be harmed the most by any uncorrected and material defects in the petition or notice are the children who are the subject of this proceeding.

We believe that both prosecutors and defense counsel should be attentive to the petition and notice issues discussed here. The failure to examine a petition or notice for defects or to verify proper service and return of service—sometimes with respect to a for-

---

**3.** West Virginia Code § 49–6–1(b) provides:

The petition and notice of the hearing shall be served upon both parents and any other custodian, giving to such parents or custodian at least ten days' notice, and notice shall be given to the state department. In cases wherein personal service within West Virginia cannot be obtained after due diligence upon any parent or other custodian, a copy of the petition and notice of the hearing shall be mailed to such person by certified mail, addressee only, return receipt requested, to the last known address of such person. If said person signs the certificate, service shall be complete and said certificate shall be filed as proof of said service with the clerk of the circuit court. If service cannot be obtained by personal service or by certified mail, notice shall be by publication as a Class II legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this code. A notice of hearing shall specify the time and place of the hearing, the right to counsel of the child and parents or other custodians at every stage of the proceedings and the fact that such proceedings can result in the permanent termination of the parental rights. Failure to object to defects in the petition and notice shall not be construed as a waiver.

gotten party—can operate to deprive a client of sound representation or even to deprive the judgment of the court of its intended force and effect, as against one party or all parties. While such requirements as we have been addressing may appear burdensome at first blush, we respectfully suggest that careful attention to matters of this nature will serve petitioners and respondents and their counsel well. The pleader is likely in the process to ascertain any deficiencies in proof or practice, and the defender is likely to do the same, to the end that the result of the case, whatever it may be, will be prompt, satisfactory, and binding. To those who must prepare petitions, notices, returns of service, publication orders and the like, to comply with such technical or substantive requirements, we suggest that pre-printed or computerized forms can be readily utilized to permit the pleader to swiftly and thoughtfully demonstrate and assure compliance with such requirements.

**Adjudication of abuse and neglect.** We agree completely with the conclusion of the majority that "the DHHR failed to meet its statutory burden of proof" in this case with respect to proof of abuse and neglect by clear and convincing evidence. However, we believe the reasons assigned by the majority for its decision, while correct, are incomplete.

In dealing with what can constitute proof in a child abuse or neglect proceeding, the Legislature has specifically stated that "[t]he petition shall not be taken as confessed...." W.Va. Code § 49–6–2(c). Under the law, a matter is said to be confessed when its resolution results from the voluntary agreement of the parties rather than upon proof otherwise legally adduced. *See Morehead v. DeFord,* 6 W.Va. 316 (1879); and *Third National Bank v. Divine Grocery Company,* 97 Tenn. 603, 37 S.W. 390 (1896). It readily appears that the prohibition against taking the petition as confessed contemplates that default judgments will not be taken. We

believe that the prohibition has a larger office than simply prohibiting default judgments. We note that the abuse and neglect statute does not provide that a custodial or parental respondent file an answer.[4] Thus, the present statutory scheme does not contemplate that the issues to be tried in such cases will be narrowed by admissions in a pleading. Rather, we believe that the statutory proscription against taking the petition as confessed requires that the allegations be proved by competent evidence adduced before the trial court, independent of any responsive pleadings.

We find support for this view in our case law. In *Calhoun County Bank v. Ellison,* 133 W.Va. 9, 54 S.E.2d 182 (1949), this Court considered the effect of admissions made by a committee, Rebecca Ellison, on behalf of her ward, a person considered to be under a disability by reason of mental illness, in pleadings responsive to a claim asserted by Edna Lochard, an adverse party. This Court likened proceedings against an insane persons to those against an infant and, noting that a decree cannot safely be obtained against an infant *"upon the mere fact of taking the bill pro confesso, or upon an answer in form by the guardian ad litem",* applied that rule to the committee's ward: Speaking for this Court, Judge Haymond said:

> But even if the denials of the answer of the committee are not sufficient, or if the answer contains admissions detrimental or prejudicial to any right or interest of her ward, William M. Ellison, the allegations in the pleadings filed by the defendant, Edna Lockard, *can not be taken for confessed* against William M. Ellison or his committee, and the admissions of the committee detrimental to any right or interest of William M. Ellison can not have any binding effect on him.... "No one may waive or admit away any substantial rights of, or consent to anything which may be prejudi-

---

4. This Court has approved for public comment the "Draft of Rules of Procedure for Child Abuse and Neglect Proceedings", which provide for answers to be filed by respondents and other changes in procedure in these cases. This concurring opinion suggests that the proper office of an answer, if authorized by the rules ultimately adopted, may be more limited than the draft rules suggest. However, we address the absence of a current statutory provision for an answer only as an aid to our analysis of the statutory proscription against taking the petition as confessed.

cial to, an insane litigant, and this rule embraces a general committee or guardian." ...

This Court has said that ... *it is reversible error to decree against an infant upon a bill of complaint which is taken for confessed; and that averments in a bill of complaint which relate to the rights of an infant must be proved in the same manner as if they had been made against an adult and had been denied by answer.*

133 W.Va. at 28–29, 54 S.E.2d at 193 (citations omitted) (emphasis added).

We are strongly persuaded by this reasoning. Above all else, child abuse and neglect proceedings *relate to the rights of an infant.* While we are mindful of the rights of parents to contest accusations of abuse and neglect which may result in the termination of their parental rights, we look first to the reality that a child abuse and neglect case is, in its essence, a proceeding which seeks to alter the rights of the child or children involved (a) in their relationship with their parents and (b) in their relationship with the State. We are of the opinion that, for all the reasons underlying the decision in *Calhoun County Bank v. Ellison,* the statutory provisions that prohibit the taking of a child abuse and neglect petition as confessed, mean that allegations in the petition must be proved in the same manner as if they had been denied by answer. For this reason, as well as those assigned by the majority, we believe that the allegations of the petition must be proved by competent evidence, properly adduced before the trial court.

In the context of a hearing to adjudicate whether a child is abused or neglected, we would emphasize, where the majority is silent, that the competent evidence required must constitute clear and convincing proof of specific conduct and how that conduct falls within the statutory definitions of abuse and neglect relied upon by the State, from all of which the trial court may then make the ultimate finding that the child or children are indeed "abused" or "neglected" children, as defined by law. As the majority correctly noted, the law of this State requires that when an abuse or neglect petition has been filed, the burden is on the State to prove abuse or neglect by clear and convincing evidence. Specifically, in *In Interest of S.C.,* 168 W.Va. 366, 284 S.E.2d 867 (1981), the Court stated that the burden of proof is upon the Department of Health and Human Resources and does not shift to the parent, guardian, or custodian of the child, even where an improvement period is granted. Further, the Court notes that "[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syllabus point 6, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973). *See also Matter of Adoption of Schoffstall,* 179 W.Va. 350, 368 S.E.2d 720 (1988); *State v. Carl B.,* 171 W.Va. 774, 301 S.E.2d 864 (1983).

**Admissions or Stipulations.** In stating our conclusions, we do not mean to suggest that proper admissions or stipulations of facts by custodial or parental respondents cannot be considered by the trial court in an abuse and neglect proceeding or that such admissions or stipulations might not contribute to or support a finding of abuse and neglect. We agree with the majority comments regarding the so-called stipulation in this case: The circuit court was not presented with a signed stipulation that could be entered into evidence; the court did not and could not ascertain the parties' "understanding of and assent to the terms"; and, the assistant prosecutor's statement and the court's questioning of the parents "did not constitute evidence." We regret that the majority did not then address in positive terms the proper form, office, and limitations of stipulations or admissions in child abuse and neglect proceedings.

First, we note that W.Va. Code § 49–6–2(c) expressly provides to parents a meaningful opportunity to be heard, the right to testify, and the right to present and cross-examine witnesses. In their headlong rush to approve stipulations generally and encourage the rehabilitation of the so-called stipulation in this case, the majority has given no attention to the interplay of these rights with the prohibition against taking allegations as confessed and the use of stipulations. We note again that confessed judgments or judg-

ments by agreement are not, in our view, contemplated with respect to the ultimate issue of abuse or neglect; that is a matter for adjudication. Nevertheless, we would place on respondents desiring to assert the rights arising under W.Va. Code § 49–6–2(c) an affirmative duty to advise the trial court of their desire to do so. In our view, it should be clearly understood by counsel for the parties that stipulations effectively waive the rights addressed by W.Va. Code § 49–6–2(c), as to the subject matter of the stipulations. We commend the majority for suggesting, however gently, that testimony should be adduced from the parties offering stipulations "regarding their understanding of and assent to the terms of the agreement." We would state additional requirements.

First, counsel to parents should be satisfied that their clients understand that, as to the subject matter of the stipulations, the rights addressed by W.Va. Code § 49–6–2(c) are effectively waived. Second, we respectfully suggest that stipulations by parents are not a substitute for the judgment of the court on the ultimate issue of abuse or neglect. Instead, such stipulations may serve as an admission of specific conduct alleged in the petition, upon which the trial court might rely, along with any other evidence needed, to reach the ultimate conclusion of fact and the conclusion of law that the child or children are indeed abused or neglected. Third, we believe the stipulations admitted into evidence should be definite and accurately recorded. Fourth, we suggest that the trial court should be satisfied that the stipulations offered regarding specific conduct constituting or contributing to abuse and neglect should meet those tests for reliability contemplated by the West Virginia Rules of Evidence.

In considering these issues, we also note that the sworn testimony of one or more of the parties in such an action, elicited on either direct or cross-examination could clearly support one or more of the allegations. We find no prohibition in law against compelling the respondents to testify in an abuse and neglect case, save, of course, those privileges against self-incrimination guaranteed by the United States and West Virginia Constitutions and such other privileges, if any, as may arise from other sources.

In summary, to find child abuse or neglect, we would require that the trial court should have before it evidence, properly received and considered, sufficient to meet the standard of clear and convincing proof enunciated by this Court and our Legislature, and sufficient to prove the required allegations of an otherwise sound petition charging abuse and neglect. Where that evidence arises from sources other than sworn testimony, from extra-judicial statements, stipulations, or documentary evidence, the trial court should be satisfied that the evidence admitted meets the requirements for reliability provided by the West Virginia Rules of Evidence. Finally, stipulations received into evidence should not simply be an agreement to or admission of ultimate facts to be adjudicated, such as abuse, neglect, or other ultimate issues; instead, stipulations of fact should aid in providing a basis upon which the ultimate issues may be adjudicated by the court.

**Finality of orders.** We regret that the majority failed to address the finality of orders in light of the legislative directions that failure to object to defects in the petition or notice shall not be construed as a waiver and that the petition shall not be taken as confessed. In keeping with our concern for prompt disposition of these cases and conscious of the profound concern for the welfare of abused or neglected children evidenced by the extensive attention given that subject in the laws of this State, we cannot conclude that the Legislature, by providing these explicit protections in the course of an abuse or neglect proceeding, intended to deny finality to judgments rendered in such cases after they had been fully litigated. Therefore, while we would willingly give full effect to those legislative directions during the proceedings, as we have indicated in this opinion, we are of the opinion that, except as to constitutional issues that may not be waived, defects in the petition or notice and allegations taken as confessed in a child abuse or neglect case should not deprive orders of finality once such finality otherwise attaches by operation of law and should not be the basis for any collateral attack upon

such orders once final. We regret that the majority has not so concluded.

**Termination of parental rights.** As the majority notes, the statutory scheme for addressing the needs of abused and neglected children contemplates that *after adjudication of abuse or neglect,* a separate, dispositional process will be undertaken to ferret out the best solution for the children. If the State seeks the termination of parental rights to carry out that plan, then the statute contemplates that certain facts be proven as a prerequisite to the termination of such rights. Those ultimate facts are detailed in W.Va. Code § 49–6–5(a)(6) and W.Va. Code § 49–6–5(b). At dispositional hearings, the parties are again entitled to a meaningful opportunity to be heard and the right to testify and present and cross-examine witnesses, provided by W.Va. Code § 49–6–2(c). Moreover, a trial court undertaking to terminate parental rights must make detailed findings from the evidence before it. We note further that the use of stipulations in the dispositional phase of the case should, in our view, be subject to like qualifications and limitations as those we suggest for adjudicatory hearings: Any stipulations should be certain and accurately recorded and, in so far as they constitute the admission of facts, duly admitted into evidence. The same concern for reliability and understanding suggested by the majority should attach, as, in our view, should those we have suggested. Lastly, we suggest that the ultimate issues in a dispositional hearing, like those in an adjudicatory hearing, ought to be decided by the court, not simply agreed to by the adult parties present. In our view, the same underlying policy reasons attach to both hearings: The rights and relationships of children with their parents, on the one hand, and with the State, on the other, ought be adjudicated in such proceedings and not be simply the subject of a contract between the State and the parents.

Lastly, we note that in the case before us, the trial court conducted a hearing for the termination of appellant's parental rights in which it found, as fact, the following:

Ms. C ... has been incarcerated in the Ohio Reformatory for Women since the fall of 1994 and has an expected release date of October, 1995 with a possibility of release to a work center in Ohio in June of 1995. We regret that the majority has failed to address the impact of that finding upon the proceeding.

In *State ex rel. Acton v. Flowers,* 154 W.Va. 209, 174 S.E.2d 742 (1970), the Court specifically stated, in syllabus point 2:

A natural parent of an infant child does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses.

We respectfully suggest that the failure of the majority to forthrightly address the thorny issues presented by the appellant's incarceration during the pendency of the cause before us requires that the trial court now resolve those issues as, in its sound discretion, it may be advised.

**Consideration of court records.** In this appeal, the appellant questioned whether the trial court could properly consider as evidence in the termination hearing the letters apparently written by the appellant to the court, which the judge, acting through the court clerk, filed in the case record of this proceeding after furnishing copies to the various parties' counsel. The majority has failed to deal with this issue.

We believe that Rule 5(e) of the West Virginia Rules of Civil Procedure, one of the few rules of civil procedure applicable to juvenile abuse and neglect cases, abrogates historic requirements for admitting material to the record by order or bills of exception, and permits papers to be added to the record by the action of a party simply filing them with the clerk of the court for inclusion in the record. *See* M. Lugar and L. Silverstein, *West Virginia Rules of Civil Procedure, Commentary on Rule 5,* p. 60 (1960).

We would conclude that in this case, when the trial judge filed the letters, they became part of the file and became "public records" within the meaning of Rule 1005 of the West Virginia Rules of Evidence.[5] We would also

---

5. Rule 1005 of the West Virginia Rules of Evidence provides:

The contents of an official record, or of a document authorized to be recorded or filed

conclude that they then became a part of the record in this case. In our view, a trial court, through judicial notice, is entitled to rely on such papers as a part of the record of the case and as public records. W.Va. R.Evid. 201. We would find no error in the court treating those letters as proffered evidence with respect to rulings rendered after their filing.

Although such letters may be considered proffered evidence for judicial notice, we note that, in conjunction with actually taking judicial notice of the letters, the parties to the proceeding are entitled to an opportunity to be heard as to the propriety of taking judicial notice of the proffered evidence and on its tenor. On this point, Rule 201(e) of the West Virginia Rules of Evidence provides:

> *Opportunity to be heard.*—A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

In our view, it is the duty of the party wishing to be heard on the issues relevant under Rule 201(e) of the West Virginia Rules of Evidence to make a timely request for such a hearing. At any such Rule 201(e) hearing, it may be anticipated that the parties may wish to be heard on the other provisions of the law relating to the taking of judicial notice.[6] As a practical matter, a party should be alert to the possibility that matters filed in the court record might be relied upon by the court at any stage in the proceedings. Fairness suggests that a party desiring to be heard make such request as

soon as practicable, on the one hand, and, on the other hand, not be taken by surprise by action taken on the basis of such material unexpectedly or so soon after its filing that there is little or no time to prepare for it.

We also note that, in addition to the letters in the file in the present case, there is also a lengthy report prepared by a welfare worker. We recognize that in juvenile abuse and neglect proceedings, it is common, if not indispensable, for the trial court to receive numerous reports and documents and file the same in the court file, as a matter of course. In our view, the principles relating to the taking of judicial notice, just discussed, should apply to such reports.[7] We believe that it is incumbent upon counsel to make clear to the court any desire by the parties to inquire under Rule 201(e). Likewise, it may be helpful and save time for the court to require each party to give early advice to the court and to the other parties of any such papers of which they desire the court to take judicial notice, and for the court itself to give such notice for documents to be considered, *sua sponte.* We would leave all of that to the discretion of the trial court, seeking only to encourage, as we have said, the fair, prompt, and satisfactory resolution of these difficult abuse and neglect cases.

## CONCLUSION

We believe that in failing to address the matters we have discussed, the majority has ignored substantial issues raised by the record of the present case. This proceeding may effectively terminate infant children's access to most elements of their natural parents' contact, attention, and love. Even though, in many of these sad cases, the pros-

---

and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.

6. The letters in the present case have been purportedly written by the appellant, but it is conceivable that they were written by some party other than the appellant. Obviously, one of the purposes of Rule 201(e) of the West Virginia Rules of Evidence is to afford an effective oppor-

tunity to raise and explore this type of issue and similar issues.

Without attempting to be exhaustive, the Court notes that there might also be questions of relevancy and competency, and certainly the questions of context and meaning of words in such materials might appropriately be raised and explored.

7. In addition to the possible evidentiary problems raised in conjunction with the letters, the Court perceives that there might be hearsay or expert opinion problems connected with such reports.

pect for such contact, attention, and love may be or may appear to be minimal, we believe that the courts should consider and adjudicate such cases with due regard to the provisions of law. While we believe that the incidence of child abuse and neglect is all too frequent in our society, the interests of justice require that the courts act in this sensitive and sad area on sound proof, in accord with the requirements of law. This concurring opinion is intended to aid in the efficient and speedy administration of that law. In our view, the procedures followed by the circuit court failed to meet those standards and the majority has failed to address many of the essentials necessary to getting the cause before us promptly and properly resolved.