No. 14-0533 - In Re: C.M and C.M.

LOUGHRY, Justice, dissenting:

In this tragic case, the Court reverses the fully-warranted termination of the mother's parental rights and orders that she be reunified with her two-young children despite the fact that **they have been in the DHHR's custody twenty-nine of the last thirty-two months**. Given that the mother has never successfully completed the terms of her improvement period, the majority's decision to order reunification contravenes this Court's longstanding recognition that the children's best interest is the compass by which these decisions are to be governed. *See* Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) ("'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.'"). Had the majority felt compelled to give the mother additional time to demonstrate her fitness as a parent, the most generous procedural relief warranted under the circumstances of this case would have been to remand the case to the circuit court for the purpose of extending the previous improvement period.[1] Instead, the majority literally ignores the sound judgment of the circuit court, the DHHR, the members of the Multi-Disciplinary team, the guardian ad litem, the entire record

---

[1]The DHHR takes the position that the mother was not entitled to any further improvement periods under West Virginia Code §§ 49-6-5, 49-6-12(c) (2014).

1

below, and then unwisely chooses the interests of an abusive and neglectful mother over the best interests of two innocent victims. As grounds for its decision that reunification is justified, the majority imprudently relies upon the mother's self-serving assertions. For these reasons, I dissent from the majority's decision in this case.

The record below fully demonstrates why these young children have yet to achieve any permanency in their lives. When the subject abuse and neglect proceedings began in August of 2012, the mother admitted both to illegally ingesting a daily dose of Oxycontin for the last eight years and drinking in the presence of her children.[2] After stipulating to the abuse and neglect of her two children, who were then two years old and less than two months old, respectively, the mother signed a case plan whereby she agreed to attend an in-patient rehabilitation facility. Deciding against the **inpatient, long-term** intensive rehabilitation program in Raleigh County where her children live, as was recommended by the DHHR, the mother entered an **outpatient, short term** twenty-eight-day program at an addiction recovery center located two hours away in Cabell County. Four days shy of the completion date, she left the program.

As the basis for its termination ruling, the trial court found that the mother:

---

[2]Assuming that the mother was telling the truth when she admitted to ingesting Oxycontin on a daily basis, an obvious conclusion can be drawn that she was doing so during her pregnancies with both children.

2

- showed that she was unwilling to make the reunification of her family her first priority;

- deliberately ignored the DHHR's reasonable directives and recommendations as contained in the treatment plan that she signed and agreed to follow;

- refused to enter a long-term rehabilitation program;

- refused to move to a facility in Beckley which would allow her to spend more time with her children; and

- failed to make any substantial progress towards reunification with her children in a timely manner.

The trial court's ruling that the mother failed to establish that reunification with her family was her first priority is demonstrated by her repeated choices in treatment and living options that were several hours from where her children were residing with their paternal aunt. As indicated above, she chose to participate in a program outside the Beckley area where her young children were living. The DHHR continually voiced its frustration with the logistical difficulties presented by the distance between where the children were living and where the mother was residing. The mother acknowledged that although she is allowed to see her children on a weekly basis, she only sees them "at least once per month." From the record submitted in this case, it is clear that the mother's paramount concern was **not** the pursuit of treatment and living options in close proximity to her children. If visiting and maintaining frequent contact with her children was her first priority, it seems logical to conclude that the mother would have sought treatment as near to them as possible. Instead, she bypassed the

3

inpatient treatment plan she had originally agreed to complete, moved to Huntington, West Virginia, and later to Vienna, West Virginia.

Critically, since August of 2012, this mother has not built any meaningful relationship or bond with her two children and, according to the most recent report to the DHHR by the administrative service provider dated January 4, 2015, the mother currently has myriad unresolved parenting deficiencies including:

> Lack of knowledge and competence in providing safety for children, lack of appropriate supervision, hygiene, budgeting, obtaining and maintaining housing, obtaining and maintaining gainful employment, use of appropriate coping and problem solving skills, communication skills, basic home management skills, social and/or emotional support networks developed.

Nonetheless, in spite of the fact that there is nothing in the record to show that the mother is even remotely capable of caring for her young children, the majority blindly orders their reunification with her.

"[A] circuit court's substantive determinations in abuse and neglect cases on adjudicative and dispositional matters–such as whether neglect or abuse is proven, or whether termination is necessary–is entitled to substantial deference in the appellate context." *In re Rebecca K.C.*, 213 W.Va. 230, 235, 579 S.E.2d 718, 723 (2003) (internal citations omitted).[3]

---

[3]This Court has explained that:

As this Court stressed in *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), "a judgment regarding the success of an improvement period is within the court's discretion . . . ." Further, "'courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . .' Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, in part, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).[4] This Court has also

> "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

*In re Timber M.,* 231 W.Va. 44, 53, 743 S.E.2d 352, 361 (2013).

[4]This Court has always remained mindful that

> whenever a child appears in court, he is a ward of that court. W.Va. Code § 49-5-4 (1996); *Mary D. v. Watt*, 190 W.Va. 341, 438 S.E.2d 521 (1992). Courts are thus statutorily reposed with a strong obligation to oversee and protect each child who comes before them. As Justices Cleckley and Albright stated in *West Virginia Department of Health and Human Resources ex. rel. Wright v. Brenda C.*, 197 W.Va. 468, 475 S.E.2d 560 (1996), "[a]bove all else, child abuse and neglect proceedings relate to the rights of an infant." *Id.* at 477, 475 S.E.2d at 569.

*State v. Julie G.*, 201 W.Va. 764, 776, 500 S.E.2d 877, 889 (1997) (J. Workman, dissenting). Moreover, as we stated in *Timber M.*, 231 W.Va. 44, 743 S.E.2d 352,

> [I]t is clear from our [child abuse and neglect] procedural rules, as well as our prior case law, that "[t]here cannot be too much advocacy for children." *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 570, 490 S.E.2d 642, 657 (1997) (Workman, C.J., concurring). Indeed, if one thing is firmly fixed in our

recognized that "'it is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve . . . [the] overall attitude and approach to parenting.' *W.Va. Dept. of Human Serv. v. Peggy F.*, 184 W.Va. 60, 64, 399 S.E.2d 460, 464 (1990)." *In re Jonathan Michael D.*, 194 W.Va. 20, 27, 459 S.E.2d 131, 138 (1995). Thus, "'[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court . . . . "regardless of whether . . . the individual has completed all suggestions or goals set forth in family case plans."' *In Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991)." *In re Jonathan Michael D.*, 194 W.Va. at 27, 459 S.E.2d at 138.[5]

In this same regard, this Court has previously observed that "[t]he question at the dispositional phase of a child abuse and neglect proceeding is not simply whether the

> jurisprudence involving abused and neglected children, it is that the "polar star test [is] looking to the best interests of our children and their right to healthy, happy productive lives[.]" *In re Edward B.*, 210 W.Va. 621, 632, 558 S.E.2d 620, 631 (2001). This Court has repeatedly stated that a child's welfare acts as "the polar star by which the discretion of the court will be guided." *In Re: Clifford K.*, 217 W.Va. 625, 634, 619 S.E.2d 138, 147 (2005) (internal citation omitted).

231 W.Va. at 59-60, 743 S.E.2d at 367-68.

[5]*See also Matter of Brian D.*, 194 W.Va. 623, 636, 461 S.E.2d 129, 142 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren). . . . and [the children's] own feelings and emotional attachments should be taken into consideration by the lower court.").

6

parent has successfully completed his or her assigned tasks during the improvement period. Rather, the pivotal question is what disposition is consistent with the best interests of the child." *In re Frances J.A.S.*, 213 W.Va. 636, 646, 584 S.E.2d 492, 502 (2003).[6] Nonetheless, with little analysis, the majority simply concludes that the trial court was wrong with its first-hand observations and determinations relative to the mother's compliance with her treatment plans and her unwillingness to abide by the DHHR's directives and recommendations. In this case, the trial court, after years of involvement in this matter, determined that the mother was **not** moving towards a successful reunification with her children. Usurping the trial court's function, the majority wholly discarded the lower court's findings and rulings and, instead, declared that "the Mother was making steady progress during the post-adjudicatory improvement period." I strongly disagree.[7]

---

[6]This Court has also said:

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and *whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child*.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991) (emphasis added).

[7]The majority also states that the mother "obtained housing and employment, enrolled in college, and participated in successful visitations with her children." The evidence in the record regarding the mother's gainful employment comes from the mother's brief wherein her counsel maintains that she has worked at Red Lobster since October 20, 2014. The guardian ad litem, however, provides the mother's employment forms demonstrating that as of December 28, 2014, her year-to-date earnings were $68.42. With regard to the majority's

As indicated from the most recent reports submitted by the guardian ad litem to this Court, it appears that the mother has been seeing the biological father of the children and has spent several nights with him. This is alarming for innumerable reasons. The father's parental rights to these children were previously terminated due to his failure to complete a psychological evaluation, his positive test results on multiple drug screens, and later his failure to report for any further drug screens. He failed to complete the BIPPS program, failed to complete a substance abuse program, and did not participate in any of the parenting skills classes with the service providers. The DHHR's initial petition for termination of the father's rights was stayed due to his March 19, 2013, incarceration (which lasted for approximately one year) as a result of **selling illicit drugs out of his home**. This is the same man from whom the mother previously hid in the woods with one of the infant children because she feared for their safety. She was found with substantial injuries to her body, including bruises, bloody lacerations, and an inability to move her left arm. Because the father's rights were terminated and because the mother initially viewed herself as the

---

statement that she "enrolled in college" the only "proof" is the assertion by her counsel that she **intended** to take classes to be a surgical technician in Parkersburg, West Virginia. There is no actual evidence that she started such a program. Furthermore, as far as the fact that the mother has apparently signed a lease for an apartment in Vienna, the DHHR points out that it is unknown whether such housing is suitable for these children. The DHHR maintains that the mother has not been available for home visits, which is further frustrated by the fact that she refuses to have direct contact with the DHHR and only communicates through her legal counsel. The DHHR contends that all of the mother's goals, including work and college classes, could have been achieved in Raleigh County where her children are currently living.

victim of his drug-related habits and life-style, there is obvious renewed concern that the mother may be sliding into an old pattern of behavior that is not indicative of someone seeking to stay away from environments where drug usage may be occurring. While no negative drug or alcohol screens have yet surfaced, the guardian ad litem notes several instances where required drug screens did not take place.[8] All of this adds further support to the trial court's conclusion that there was "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future."

This Court strives to attain permanent custodial arrangements for children determined to be abused and/or neglected with as much alacrity as possible. *See In Re Beth Ann B.*, 204 W.Va. 424, 429, 513 S.E.2d 472, 477 (1998) (recognizing need for circuit court to "act with great dispatch to bring safety, stability, security, and permanency" to lives of abused and or neglected children"). As previously discussed, the underlying abuse and

---

[8]The guardian ad litem states that during the month of October 2014, the mother did not have drug screens for three weeks and, on January 6, 2015, the same day as her visit with her children, she missed her drug screen in Parkersburg. She informed her provider that she would test either in Parkersburg or Beckley that same day; however, she did not make arrangements to test until several days later. The guardian ad litem maintains: "As the history with [the mother] in the record before the Circuit Court was that [the mother] abused both prescription drugs and alcohol which remain in an individual's system for just a period of a few days and a missed drug screen as late as last week, the Guardian is left to speculate as to whether she is abusing drugs or alcohol again. The mere fact that [the mother] failed to make arrangements at either of the drug screening locations on the day of her visit and after telling her provider that she would [take the] test suggests a failure to act as a responsible and stable adult."

9

neglect proceeding has been pending for nearly three years and the permanency plan for the children will once again be in a state of turmoil. *See* W.Va. R.P. Child Abuse & Neglect Proceed. 43 ("Permanent placement of each child shall be achieved within twelve (12) months of the final disposition order, unless the court specifically finds on the record extraordinary reasons sufficient to justify the delay."). With regard to the time frame in which final disposition of abuse and neglect cases should be made, this Court has recognized that "[a]lthough it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life. . . ." *Amy M.*, 196 W.Va. at 260, 470 S.E.2d at 214. Indeed, improvement periods are "regulated, both in their allowance and in their duration, by the West Virginia Legislature, which has assumed the responsibility of implementing guidelines for child abuse and neglect proceedings generally." *In re Emily*, 208 W.Va. at 334-35, 540 S.E.2d at 551-52. The circuit court understood this and acted in a manner that allowed these children to remain in the stable environment in which they had lived with their paternal aunt for the past two-and-one-half years. It is unfortunate that the majority of this Court has now destroyed that stability.

This is not a case where the mother has not had time to demonstrate her fitness as a parent. She simply has not stepped up to the plate with regard to the reunification aspect

of her improvement plan. She may have had early success with her drug-related issues, but as previously stated, she ignored the long-term drug and alcohol treatment program and, according to the DHHR, she still denies having any such dependency issues.

These children deserve a safe and stable environment and that environment has been continually provided by the paternal aunt in whose home the children have been residing since the inception of this matter. For the majority now to decide it knows better than the trial court what these children need–especially in light of the trial court's finding that it would not be in the best interests of the children to be returned to their mother–is both misguided and violative of the trial court's discretion in this matter. *See* Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W.Va. at 239, 470 S.E.2d at 193 ("[A] reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.").

For the foregoing reasons, I respectfully dissent.