# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.L.**

**No. 19-0846** (Raleigh County 18-JA-186-B)

**FILED**

**September 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.L., by counsel Carl W. Roop, appeals the Circuit Court of Raleigh County's September 10, 2019, order terminating her parental rights to L.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Winifred L. Bucy, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her a post-dispositional improvement period and in terminating her parental rights.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner raises several other assignments of error in which she asserts that the circuit court failed to adhere to several of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. However, in support of these assignments of error, petitioner fails to include any citation to the record to establish that these issues were preserved for appellate review. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . [and] must contain appropriate and specific citations to the record on appeal, *including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal*. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Here, petitioner's brief in regard to these assignments of error is inadequate, as it fails to comply with Rule 10(c)(7). Even more importantly, petitioner fails to assert, let

(continued . . . )

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2018, the DHHR filed an abuse and neglect petition alleging that petitioner delivered the child at twenty-five weeks gestation, at which time petitioner tested positive for methamphetamine.[3] Upon investigation, petitioner told a DHHR worker that she had been prescribed hydrocodone a few days prior because she had teeth extracted and also took Claritin D, an over-the-counter antihistamine. The petition further alleged that the child's cord blood tested positive for amphetamine and methamphetamine. Petitioner later submitted to another drug screen that was also positive for amphetamine and methamphetamine. Based on petitioner's substance abuse, the DHHR alleged that the child was abused and neglected. Thereafter, the circuit court ratified the DHHR's emergency custody of the child at the preliminary hearing.

At the adjudicatory hearing in October of 2018, petitioner stipulated to abusing the child and moved for a post-adjudicatory improvement period, which the circuit court granted. According to the family case plan, the terms and conditions of petitioner's improvement period required her to submit to random drug screens, visit with the child, participate in parenting and adult life skills education, complete substance abuse treatment, and complete a psychological evaluation and comply with the recommendations thereof.

In July of 2019, the guardian filed a report stating that petitioner had not completed any of the goals of her improvement period. Specifically, the guardian's report indicated that petitioner "failed to fully participate, maintained the attitude she did not need the services, and could deal with the problem without long term drug therapy." The guardian's report further explained that petitioner "fail[ed] to timely obtain a psychological evaluation" and "fail[ed] to adequately utilize the services afforded to her by the [DHHR], including visitation with her

_____

alone cite to the record to support such assertions, that she objected to any of these alleged procedural failures in the court below. As this Court has long held, "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Further, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Accordingly, the Court will not address these assignments of error on appeal.

[3]The record shows that several of petitioner's other children were named in the petition below. However, these children are not at issue on appeal and will be referenced only where necessary in addressing petitioner's assignments of error.

child[].” Importantly, the guardian concluded by stating that, to the extent petitioner did meet any of the criteria of the case plan, it was "achieved to meet her own needs, not the needs of the child[]," given that her compliance was "due to a recent arrest" and her desire to mitigate any sentence associated with that arrest.

The following month, the circuit court held a dispositional hearing, during which petitioner's counsel requested a post-dispositional improvement period, although no written motion was filed. In addressing this request, the DHHR expressed the position that it did not oppose petitioner receiving an additional improvement period; however, it conceded that it would be "very difficult" for petitioner to remedy the conditions of abuse and neglect during an additional improvement period such that she was able to care for the child on her own. According to the record, petitioner admitted that her plan to care for the child was to rely on the child's grandmother, who already had custody of two of petitioner's other children who are not at issue in this appeal. The evidence below also established that the child's grandmother continued to smoke in L.L.'s presence during visits, despite the fact that the child requires oxygen as a result of his medical issues. Because of the grandmother's inability to cease smoking in the child's presence, the guardian asserted that she was not an appropriate caregiver. Based on the evidence from the guardian's report, in conjunction with the representations of counsel at the hearing, the court found that petitioner was not entitled to an additional improvement period because it was not likely that she could correct the conditions of abuse and neglect. The court additionally found that denying the improvement period was in the child's best interests. Further, in regard to the termination of petitioner's parental rights, the circuit court reiterated that the evidence showed that petitioner was unlikely to correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the child's best interests. Accordingly, the circuit court terminated petitioner's parental rights to the child.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[4]According to respondents, proceedings in regard to the father are ongoing. The permanency plan for the child is reunification with the father, while the concurrent permanency plan is adoption in his current placement.

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises several arguments in support of her assignment of error that termination of her parental rights was in error. First, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-dispositional improvement period. According to petitioner, the court failed to properly consider her progress in making this determination and, instead, denied the motion upon speculation that she would be unsuccessful. We find, however, that petitioner is entitled to no relief on appeal.

At the outset, we emphasize that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Further, we have held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). On appeal, petitioner argues that she satisfied this burden by establishing that she completed the MOTHER substance abuse treatment program and obtained a residence. The record shows, however, that petitioner's participation in this treatment program was tied to an arrest that occurred during the proceedings. According to the guardian's report, to the extent that petitioner met any of the case plan's criteria, it "appears to have been achieved to meet her own needs, not the needs of the children" in that her compliance was related to this arrest. Additionally, petitioner's counsel admitted at disposition that petitioner submitted to substance abuse treatment "late in this game." Further, the record shows that petitioner failed to complete any of the terms and conditions of her post-adjudicatory improvement period. Specifically, the guardian's report established that petitioner failed to attend all of her drug screens, complete parenting and adult life skills education, or complete a psychological evaluation and follow all of the recommendations thereof.[5] The guardian further established that petitioner "failed to fully

---

[5]All of these requirements were set forth in the DHHR's case plan filed with the court below. On appeal, petitioner argues that she did not execute the case plan and, therefore, that the plan was inadequate. We note, however, that petitioner had a responsibility to participate in the creation and formulation of this case plan. Indeed, pursuant to West Virginia Code § 49-4-604(d)(2), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future includes when "[t]he abusing parent . . . ha[s] willfully refused or [is] presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control." Petitioner inappropriately cites to her failure to attend the multidisciplinary team meeting where the case plan was created and her subsequent failure to execute the same as a deficiency on the DHHR's part, when, in reality, it constitutes a failure on petitioner's part to actively engage in

(continued . . . )

4

participate, maintained the attitude [that] she did not need the services, and could deal with the problem without long term drug therapy, opting for the short term." Contrary to petitioner's assertion that she progressed during the proceedings, the evidence shows that she failed to comply with the terms and conditions of her first improvement period.

Pursuant to West Virginia Code § 49-4-610(3)(D), if a parent has previously been granted an improvement period, she must "demonstrate[] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and "demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." On appeal, petitioner does not cite to any evidence establishing a substantial change in circumstances that would demonstrate that she was likely to fully participate in a post-dispositional improvement period. It is true that the record shows that petitioner completed the MOTHER program and acquired a residence before the improvement period. However, these facts do not constitute a substantial change in circumstances such that the circuit court's denial of her motion for a post-dispositional improvement period would be erroneous. While these changes may have constituted positive improvements in petitioner's life, neither were contemplated by the case plan as a means to remedy the conditions of abuse and neglect. As the guardian established, petitioner's participation in this substance abuse program fell short of the substance abuse treatment required under the case plan. Even more importantly, petitioner offers no explanation for her failure to comply with the goals of her first improvement period over a period of several months. Further, while petitioner argues that the circuit court did not consider her accomplishments, the record shows otherwise. Indeed, the circuit court undertook a lengthy discussion of petitioner's progress outside her post-adjudicatory improvement period when addressing her motion for a post-dispositional improvement period. Because the record shows that the circuit court considered this evidence but that it ultimately did not speak to petitioner's ability to achieve the goals of the case plan and remedy the conditions of abuse and neglect, we find no error.

Further, although the DHHR did not object to the improvement period, it did, however, admit that it did not believe petitioner would be able to correct the conditions of abuse and neglect during a post-dispositional improvement period such that she would be able to care for the child on her own. On appeal, petitioner argues that the circuit court erred in denying her motion on the basis of speculation about her ability to improve. What petitioner ignores, however, is that this Court has established that "[t]he circuit court has the discretion to refuse to grant an improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). As set forth above, the record shows that petitioner was not compliant with the terms and conditions of her case plan and that she was unlikely to be successful in remedying the conditions of abuse and neglect in the near future if granted a post-dispositional improvement period. As such, we find no error in the circuit court's denial of her motion.

---

the process of remedying the conditions of abuse and neglect. As such, any argument petitioner advances in regard to the case plan does not entitle her to relief on appeal.

In support of this assignment of error, petitioner also argues that she should have been entitled to an improvement period because she obtained childcare in the form of assistance from the child's maternal grandmother. This argument, however, ignores several facts. First, petitioner's characterization of obtaining assistance from the grandmother as childcare does not comport with the record. Instead, the record shows that the DHHR addressed the court at length about petitioner's inability to accept custody of the child without the grandmother's assistance. As opposed to childcare as a supplement to petitioner's own care of the child, the record demonstrates that petitioner would have relied on the grandmother to provide the child with the appropriate care she could not provide herself. Further, petitioner ignores the evidence that the grandmother continued to smoke in the child's presence during visits below, despite the fact that the child requires oxygen for health issues. Because of the evidence regarding the harm the grandmother's conduct posed to the child, granting petitioner an improvement period with the knowledge that the grandmother would be the child's primary caregiver was not in the child's best interests. Further, the record shows that the grandmother already provides care for two of petitioner's other children not at issue on appeal, thereby limiting her ability to provide for a child with heightened medical needs. In short, the record shows that the grandmother providing care for the child was not in his best interests and any argument that petitioner should have been entitled to an improvement period because the grandmother could have cared for the child necessarily fails.

Next, petitioner argues that the circuit erred in terminating her parental rights because it failed to hold an evidentiary hearing at disposition and, instead, accepted a proffer from the parties. In support of this argument, petitioner appears to assert two different errors. The first is that the failure to hold an evidentiary hearing resulted in a failure to require the DHHR to meet its burden of proof, and the other is that failing to hold an evidentiary hearing violated her right to testify and present and cross-examine witnesses. We find these arguments unavailing. To begin, West Virginia Code § 49-4-601(h)[6] provides that "[i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." There is simply nothing in the record to suggest that petitioner's right to be heard was violated during the dispositional hearing. The record shows that the circuit court permitted all parties, including petitioner, the opportunity to call witnesses. There is nothing in the record to show that petitioner wished to testify or present witnesses but was prevented from doing so. Further, petitioner's right to cross-examine witnesses was not violated because no witnesses were presented during the hearing. Simply put, the fact that no witnesses were called during the hearing does not equate to a violation of petitioner's right to be heard. Further, petitioner confusingly argues that the "[r]equirement of cross-examination is fully met when counsel for the parent or guardian is present during the testimony of a child witness and is given the opportunity to fully cross-examine the witness." The child at issue on appeal is

---

[6]In her brief on appeal, petitioner cites to West Virginia Code § 49-6-2(c) for the proposition that the circuit court violated her right to be heard. We note, however, that no such statute exists, as Chapter 49 of the Code underwent a substantial reorganization in 2015. Currently, the right to be heard in abuse and neglect proceedings is found in West Virginia Code § 49-4-601(h).

6

two years old and could not have testified in the proceedings below. Accordingly, petitioner's argument entitles her to no relief.

Similarly, petitioner's argument regarding the nature of the dispositional hearing does not establish that the DHHR failed to satisfy the applicable burden of proof for termination of parental rights. While it is true that the circuit court relied on proffers at the dispositional hearing, petitioner ignores the fact that the guardian's report, which contained extensive evidence of petitioner's noncompliance with the terms and conditions of her case plan, was admitted into evidence below. As this Court has previously held,

> [o]nce there has been a proper finding of abuse or neglect, the proceedings move into the dispositional phase, which is governed by W.Va. Code § [49-4-604]. The statute provides a number of dispositional alternatives which the court may consider, giving precedence to the least restrictive alternative appropriate to the circumstances. Termination of parental rights, the most restrictive alternative, is authorized only "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child." W.Va. Code § [49-4-604(c)(6)]. The State must produce clear and convincing evidence to support this finding before the court may sever the custodial rights of the natural parents. *State v. Carl B.*, [171] W. Va. [774], 301 S.E.2d 864 (1983); *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

*State v. C.N.S.*, 173 W. Va. 651, 656, 319 S.E.2d 775, 780 (1984). Here, the record contained clear and convincing evidence to support a finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. As set forth above, the guardian's report contained evidence that petitioner failed to comply with the terms and conditions of her case plan, despite several months in which to demonstrate her willingness to correct the conditions of abuse and neglect. Further, while it is true that the DHHR did not oppose a post-dispositional improvement period for petitioner, it nonetheless admitted that it did not believe that petitioner would be able to remedy the conditions of abuse and neglect at the conclusion of such a period. Additionally, "[w]e have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). As set forth above, petitioner did not visit with the child throughout the entirety of the proceedings. Finally, the circuit court found that "the best interests of [the child] may only be advanced and protected by the termination" of petitioner's parental rights. Accordingly, the record contains clear and convincing evidence to support the findings necessary to terminate petitioner's parental rights, and we find that petitioner is entitled to no relief.

Finally, petitioner argues that the circuit court failed to consider a less-restrictive dispositional alternative, such as placement of the child with the maternal grandmother. According to petitioner, the failure to place the child with the grandmother violated not only the grandparent preference, as set forth in West Virginia Code § 49-4-114, but also the preference

for placing siblings together, as set forth in West Virginia Code § 49-4-111. Without belaboring the specifics of petitioner's argument, it is sufficient to point out that neither of these preferences for placing a child with a grandparent or with siblings is absolute. *See In re J.P.*, -- W. Va. --, 844 S.E.2d 165, 172 (2020) ("Nonetheless, while we emphasize the importance of the grandparent preference, we also note that this Court has found that the preference is not absolute."); *In re K.L.*, 241 W. Va. 546, 557, 826 S.E.2d 671, 682 (2019) ("Moreover, regardless of whether there exists a placement preference that applies to the facts of this case, any preference always is tempered by a consideration of the children's best interests."). Indeed, "the best interests of the child is the polar star by which decisions must be made which affect children." *Kristopher O. v. Mazzone*, 227 W. Va. 184, 192, 706 S.E.2d 381, 389 (2011). Here, the child could not be placed in the grandmother's home with his two siblings because it did not serve the child's best interests. As the guardian established, the child's heightened medical needs required constant care, while the grandmother demonstrated an unwillingness to cease smoking around the child during the limited periods of visitation below. Further, the circuit court noted that the child was removed from the mother's care at birth and has resided in the foster home, where he receives specialized care, since that time. As such, the court noted that there was no bond between the child and his siblings, which supported their placement in separate homes because it, essentially, had no impact on the child. Ultimately, the court found that "[e]very indicator . . . points to the conclusion that the best interests of [the child] would be served, would be advanced by . . . his continued placement in an environment where it is known that the special needs that he has can be attended to." As such, we find no error in the circuit court's decision to terminate petitioner's parental rights instead of granting a disposition where the child was placed with the grandmother under West Virginia Code § 49-4-604(c)(5).[7]

Given the foregoing, we find that termination of petitioner's parental rights was not in error, as the evidence established that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare. As this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

---

[7]We also note that the issue of the child's permanent placement was not addressed at the dispositional hearing. To the extent that the circuit court denied petitioner a disposition under West Virginia Code § 49-4-604(c)(5) by placing the child in a guardianship with the grandmother, the court nonetheless held that the grandmother "certainly continues to have the right to be heard on the issue of permanency" at a later hearing.

Lastly, because the proceedings regarding the child's permanent placement and petitioner's parental rights to the child's siblings are ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 10, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

9

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison